GREENBAUM & BROWNE, LTD., Plaintiff-Appellee, *v*. RICHARD L. BRAUN, Defendant-Appellant.

First District (2nd Division)    No. 79-1163

Opinion filed August 26, 1980.—Rehearing denied October 1, 1980.

Simon & McClosky, Ltd., of Chicago (Robert B. Simon and E. Jacob McClosky, of counsel), for appellant.

Greenbaum & Browne, Ltd., of Chicago (Richard J. Sorman, of counsel), for appellee *pro se*.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Plaintiff-appellee, Greenbaum & Browne, Ltd., an Illinois professional corporation whose shareholders are licensed to practice law in the State of Illinois, brought an action to recover the sum of $14,192.64 allegedly due from defendant-appellant, Richard L. Braun, for legal services rendered. The circuit court of Cook County entered judgment upon a jury verdict in favor of plaintiff in the amount of $14,192.64. Defendant appeals contending that the trial court erred in denying his post-trial motion to reduce the amount of the judgment.

For the reasons hereinafter set forth we reverse in part and affirm in part.

During a meeting at plaintiff's office in December 1974, attorneys Greenbaum and Browne discussed with defendant an outstanding balance of $8,264.61 for legal services rendered by plaintiff to Kaplan & Braun, Inc., a corporation with which defendant is allegedly associated.[1] At this meeting attorney Greenbaum advised defendant that because Kaplan & Braun, Inc., had encountered serious financial difficulties,[2] plaintiff would be

---

[1] Plaintiff's brief represents that defendant is the majority shareholder in Kaplan & Braun, Inc. However, no evidence was adduced at trial in support of this representation.

[2] Prior to this meeting, defendant, attorneys Greenbaum and Brown, a bankruptcy attorney and the creditors of Kaplan & Braun, Inc., had assembled to discuss the financial difficulties of Kaplan & Braun, Inc.

unable to render further legal services to Kaplan & Braun, Inc., or to defendant individually unless defendant (1) agreed to be personally liable for the outstanding account of $8,264.61 for the services rendered to Kaplan & Braun, Inc., and (2) agreed to be personally liable for all future services rendered on behalf of defendant individually or on behalf of any of the various entities with which defendant was associated. Attorneys Greenbaum and Browne testified that defendant so agreed. However, defendant testified that he had informed attorneys Greenbaum and Browne that "he did not feel responsible for the debts of the corporation," nor was he "in a position to pay those debts." Defendant further testified that he had requested that plaintiff continue to represent him in "personal matters" for which he "would attempt to pay a reasonable fee."

Subsequent to the December 1974 meeting plaintiff rendered legal services to defendant individually, to Kaplan & Braun, Inc., and to an entity referred to as "Bralen." Plaintiff periodically sent statements to defendant requesting payment for these services, for the services rendered to Kaplan & Braun, Inc., prior to December 1974 ($8,264.61), and for services rendered to an entity referred to as Lake Zurich Associates.

Defendant testified that during a meeting at plaintiff's office in either May or June 1976 he again informed attorneys Greenbaum and Browne that he did not feel personally obligated for the fees for services rendered to Kaplan & Braun, Inc. Defendant further testified that attorney Browne threatened to file a lawsuit against defendant and "attach" his house.

The jury, after hearing the evidence and arguments of counsel, found in favor of plaintiff and against defendant in the amount of $14,192.64. The trial court entered judgment on the jury's verdict and denied defendant's post-trial motion to reduce the amount of the judgment.

## I.

The law in Illinois, at least since 1893, when our supreme court decided *Rolfe v. Rich* (1893), 149 Ill. 436, 35 N.E. 352, has placed special obligations upon an attorney by virtue of the relationship between attorney and client. These obligations, generally referred to as the fiduciary duty of the attorney, permeate all phases of the relationship, including the contract for payments. In *Rolfe* the court opined at page 437:

> "While the law is, that dealings between attorney and client, resulting in advantage to the former, will be closely scrutinized, and the attorney be required to show the utmost good faith and fairness, and that the client dealt with full knowledge of his rights, it does not prohibit all dealings between them, or declare all contracts made by the attorney with the client *ipso facto* void, or voidable at the instance of the client."

See also *In re Kutner* (1979), 78 Ill. 2d 157, 162, 399 N.E.2d 963.

Defendant first contends that the trial court erred in not reducing the amount of the judgment by the sum of $8,264.61, that is, the amount of the fees previously billed by plaintiff to Kaplan & Braun, Inc., for services rendered to Kaplan & Braun, Inc., prior to December 1974. In support of his contention defendant argues that plaintiff failed to prove the fairness and reasonableness of these fees. Plaintiff maintains that it proved a novation whereby Kaplan & Braun, Inc.'s debt to plaintiff was not extinguished and in its stead was substituted defendant's promise to pay the fees. In support of its contention plaintiff argues that "[t]he prior obligation, and its underpinnings, are not subject to review or question."

■■ Novation may be broadly defined as a substitution of a new contract or obligation for an existing one which is thereby extinguished. More specifically, it is the substitution by mutual agreement of one debtor or of one creditor for another, whereby the existing debt is extinguished. (*Faith v. Martoccio* (1974), 21 Ill. App. 3d 999, 1003-04, 316 N.E.2d 164; *Printing Machine Maintenance, Inc. v. Carton Products Co.* (1957), 15 Ill. App. 2d 543, 552, 147 N.E.2d 443.) The essential elements of a novation are (1) a previous, valid obligation; (2) a subsequent agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. (*Kiefer v. Reis* (1928), 331 Ill. 38, 43; *Faith*, at 1003-04.) The party seeking to prove the novation has the burden of proof and must establish it by a preponderance of the evidence. (*Faith*, at 1004.) Thus, to prove a novation plaintiff has the burden to prove, by a preponderance of the evidence, the existence of a previous, valid obligation.

■■■ If an attorney renders professional services, he has the right to be compensated for such services. (Ill. Rev. Stat. 1977, ch. 13, par. 1; *Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 710, 355 N.E.2d 86.) Where an attorney and client enter into an express contract for representation, the express contract will control the compensation due the attorney. (*Neville*, at 710.) Where an express contract is not entered into, there is generally an implied promise to pay a reasonable compensation for the services rendered by the attorney pursuant to the theory of *quantum meruit*. In Illinois a plaintiff may recover under *quantum meruit* on a claim made pursuant to an express contract without amendment of the pleadings, where plaintiff fails to establish the express contract but does show in fact that services were rendered. *Moreen v. Estate of Carlson* (1937), 365 Ill. 482, 493, 6 N.E.2d 871; *Neville*, at 710.

In the case at bar, the only evidence presented by plaintiff concerning the existence of a valid previous obligation, *i.e.*, the fees due from Kaplan & Braun, Inc., was a copy of the statement of account.

■■ As between an attorney and client, mere allegations of a stated account, when strictly construed, are not sufficient to allege a liability of the client to the attorney on account of fees. (*Woods v. First National Bank*

(1942), 314 Ill. App. 340, 345, 41 N.E.2d 235.) The burden is upon the attorney to show, in the first instance, that any agreement he has made with his client is fair, just and reasonable. (*Woods*, at 345.) Thus, we conclude that plaintiff failed to prove the existence of a valid, previous obligation of Kaplan & Braun, Inc., pursuant to an account-stated theory.

■■■ Nor can we conclude that plaintiff proved the existence of a valid, previous obligation of Kaplan & Braun, Inc. pursuant to a theory of *quantum meruit. Quantum meruit* literally means "as much as he deserved." An attorney recovering thereunder is entitled to receive the reasonable worth or value of his services as shown by the evidence. (*People's Casualty Claim Adjustment Co. v. Darrow* (1898), 172 Ill. 62, 64, 49 N.E. 1005; *Neville*, at 711.) The factors to be considered in determining the reasonable value of the services are: the skill and standing of the attorney employed; the nature of the cause and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. (*Louisville, New Albany & Chicago Ry. Co. v. Wallace* (1891), 136 Ill. 87, 93, 26 N.E. 493; *Neville*, at 711.) As we previously observed, no evidence was introduced concerning the fees of $8,264.61 allegedly due from Kaplan & Braun, Inc., prior to the alleged novation. It is, therefore, our opinion that the trial court should have reduced the judgment by the amount of $8,264.61.

## II.

Defendant contends that the trial court erred in refusing to reduce the judgment by an amount of $3,662.13, that is, the "Lake Zurich Associates" fee. In support of his contention, defendant argues that there was no evidence adduced concerning the fairness and reasonableness of the fee, nor any evidence adduced to prove that plaintiff performed services which would form the basis for the fee. Plaintiff maintains that the sum of $3,662.13 was a cash advance made by plaintiff on behalf of defendant, and as such there was no necessity to prove the fairness or reasonableness of the amount.

Exhibit 1[3] reveals that on January 9, 1976, a statement was sent to defendant, a portion of which read as follows:

"As per many previous statements rendered
Re: Lake Zurich Associates.....................$3,662.13"

This exhibit contains five statements of account sent to defendant prior to the January 9, 1976 statement: December 4, 1975; October 7, 1975; September 8, 1975; July 10, 1975; and February 13, 1975. None of these

---

[3] Exhibit 1 consists of nine statements periodically sent to defendant commencing on February 13, 1975, and terminating on June 22, 1975.

statements refers to the Lake Zurich Associates fee. Attorney Browne testified at trial that:

> "The $3662.00 charged to Lake Zurich as a fee was paid. We paid it ourselves. The fee was paid. I paid it myself and that's cash advanced that he owed me $3600.00."

Exhibit 3, consisting of 21 time cards of plaintiff, reveals that only four of those cards refer to Lake Zurich Associates and document a total of 1½ hours expended. During closing argument plaintiff's attorney agreed with defendant's counsel that the $3,662.13 was not a loan. Instead, plaintiff's attorney argued that it was cash advanced. Defendant's counsel argued in response:

> "My position is that they testified that the fee was paid. He says a cash advance, and, of course, as I said, the only person to whom they could pay it is themselves. There is no one else they could pay it to."

We cannot conclude from the foregoing that plaintiff proved by a preponderance of the evidence that the $3,662.13 was "cash advanced." In so concluding we note plaintiff's complaint alleges, *inter alia*, that "defendant engaged the plaintiff to perform legal services for the defendant for which defendant agreed to pay the sum of Fourteen Thousand Six Hundred Ninety-two and 64/100 Dollars ($14,692.64)," and that "[t]he fair and reasonable value of services rendered by the plaintiff to the defendant was Fourteen Thousand Six Hundred Ninety-two and 64/100 Dollars ($14,692.64)." Conspicuously absent from plaintiff's complaint is any allegation of "cash advanced." Additionally we observe that if the $3,662.13 in fact represents compensation for legal services rendered, plaintiff has failed to demonstrate the fairness and reasonableness of the fees. It is, therefore, our opinion that the trial court should have reduced the judgment by the additional amount of $3,662.13.

### III.

Defendant also contends that the trial court erred in not reducing the judgment by the further sum of $342.50, that is, the amount of fees for services rendered to Bralen, Ltd., subsequent to December 1974. In support of his contention, defendant argues that "there is no showing of the obligation of defendant to pay a fee charged to 'Bralen'."[4] Attorneys Browne and Greenbaum testified that during their meeting with defendant in December 1974, defendant had agreed to undertake personal liability for all future services rendered on behalf of the various entities with which defendant was associated. Attorney Greenbaum further testified, without dispute from defendant, that defendant had an "ownership interest" in Bralen, Ltd.

---

[4] Defendant does not argue that plaintiff failed to prove the fairness and reasonableness of these fees.

We conclude that there was sufficient evidence presented to support the jury's finding that defendant had agreed to be personally liable for the services rendered to Bralen, Ltd. Thus, it is our opinion that the trial court did not err in refusing to reduce the judgment by $342.50.

## IV.

■ Defendant finally contends that the court erred in not reducing the amount of the judgment by the further sum of $742.44, that is, the amount of fees for services rendered by plaintiff to Kaplan & Braun, Inc., subsequent to December 1, 1974. In support of this contention defendant argues that even if he agreed to be personally liable for these fees, such agreement was invalid as a result of the "great pressure applied" to him by plaintiff.[5] The evidence adduced at trial indicates that attorneys Greenbaum and Browne advised defendant that plaintiff could not continue to represent defendant or any other entities with which he was associated unless he agreed to be personally liable for such representation. Defendant testified that he was "financially and emotionally down." We cannot conclude that this evidence alone establishes "undue influence" or "impermissible pressure." Thus, it is our opinion that the trial court did not err in refusing to reduce the judgment by $742.44.

Reversed in part and affirmed in part.

DOWNING and HARTMAN, JJ., concur.

[5] Defendant does not argue that plaintiff failed to prove the fairness and reasonableness of these fees.