*In re* MARRIAGE OF DONALD W. KOSTERKA, Petitioner, and EDITH H. KOSTERKA, Respondent-Appellant (Robert A. Chapski, Ltd., Petitioner-Appellee; David I. Grund, Respondent-Appellant).

Second District   No. 2—87—1046

Opinion filed September 26, 1988.

UNVERZAGT, J., dissenting.

David I. Grund, of Grund, Marcus & McNish, P.C., of Chicago (Linda J. Kroning, of counsel), for appellant.

Robert A. Chapski, of Law Office of Robert A. Chapski, Ltd., of Elgin (Randy K. Johnson, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

On June 22, 1982, Donald Kosterka (Donald), filed his petition for dissolution of marriage in the circuit court for the Sixteenth Judicial Circuit, Kane County, Illinois. On August 25, 1982, Edith Kosterka

(Edith), represented by Schiller, DuCanto, and Fleck, Limited (Schiller), filed her petition for legal separation in the circuit court of Cook County, Illinois. The cases were subsequently consolidated in Kane County, Illinois.

On or about June 25, 1982, Edith retained Schiller to represent her in her marital proceedings against her husband. In or about June 1982, Edith gave Schiller the name of Robert Chapski (Chapski) as a lawyer who handled matrimonial matters in Geneva, Illinois. Edith did not know Chapski personally but had gotten his name from a friend of hers. Schiller retained Chapski as local (Kane County) counsel and forwarded to him a retainer fee in the amount of $500.

No written agreement was entered into by Chapski and Schiller, nor was any letter sent by Chapski to Schiller outlining the terms of Chapski's engagement or his hourly rate. No written agreement was entered into between Chapski and Edith, nor was any letter sent by Chapski to Edith outlining the terms of Chapski's engagement or his hourly rate. No billing was ever sent by Chapski to either Edith or Schiller during the course of these proceedings.

On September 26, 1984, David I. Grund (Grund) entered his appearance for Edith, and Schiller withdrew its appearance on behalf of Edith. On that same day, grounds for dissolution of marriage were proved up by Donald. On October 16, 1984, Schiller filed its petition for attorney fees under section 508 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 508). This petition contained no fees for Chapski. Schiller subsequently received approximately $17,000 in fees. None of this amount was sent to Chapski in payment for services he had rendered up to that point in the litigation. On December 4, 1984, the parties executed a written settlement agreement, settling the questions of property division, maintenance, and other issues existing between them. On December 20, 1984, a judgment of dissolution of marriage, incorporating the written settlement agreement, was entered by the court. Included in the settlement agreement was the provision that Donald would pay to Grund, as attorney for Edith, $47,000 in attorney fees. In this agreement, no mention was made of Chapski or of fees payable to him.

On July 24, 1985, Chapski filed a three-count lawsuit against Grund for attorney fees allegedly owed to Chapski by Grund as a result of the Kosterka divorce. The complaint was based on theories of oral contract, conversion, and a third-party beneficiary theory. On February 11, 1986, Chapski filed his petition in the divorce proceedings for attorney fees setting forth his hours and his services alleg-

edly rendered. The petition listed 153 total hours of work performed in Edith's behalf. He requested $20,289.95 in fees and costs. On September 5, 1986, Chapski's section 508 petition for attorney fees against Edith and Donald was consolidated with Chapski's lawsuit against Grund. Grund filed his motion to dismiss Chapski's petition arguing, among other things, that Chapski was employed by Grund as successor to the law firm of Schiller and, therefore, had no claim against Edith and Donald for attorney fees under section 508 of the Act. The court denied Grund's motion to dismiss Chapski's petition for attorney fees.

On September 11 and 14, 1987, a hearing was held on Chapski's consolidated section 508 petition and his complaint at law. At the end of Chapski's case in chief, the court granted Grund's motion for a directed finding against Chapski on Chapski's complaint at law against Grund.

Also, the court found that some of Chapski's time was unnecessary, duplicative, or uncorroborated. As a result, the court reduced his fees from $20,289.95 to $14,929.95. Also at this time, Grund stated to the court that he would indemnify Edith for Chapski's fees and costs. As her indemnitor, Grund appealed the trial court's decision. Therefore, Grund is the actual party at interest in this matter, not Edith.

On appeal Grund raises the following issues: (1) petitioner Chapski had no standing to recover attorney fees against Edith or Donald; (2) the trial court's allowance for $14,929.95 was against the manifest weight of the evidence and an abuse of discretion; and (3) the trial court erred in not disclosing the basis for its order.

Initially Grund argues that Chapski is without standing to pursue this action. Grund asserts that the evidence clearly shows that no independent attorney-client relationship existed between Chapski and Edith. In support of his argument, Grund cites the following evidence. Chapski never sent Edith a letter or an agreement outlining a fee arrangement with her. He never sent her a bill during his 2½-year involvement in the case. Chapski admitted that he never had an agreement with Edith concerning his hourly fees. He also acknowledged that he never discussed with Edith who would pay his fees, *i.e.*, Edith or Schiller.

Further, Grund points to Edith's testimony as proving no independent client-attorney relationship existed. Edith testified that she never received a bill from Chapski, that she never agreed to pay Chapski any money, and that she understood that Schiller would pay Chapski for his services.

Grund argues that the instant case is analogous to *Bounougias v. Peters* (1964), 49 Ill. App. 2d 138. In *Bounougias*, plaintiff retained defendant Peters, an attorney, to represent him in actions arising out of plaintiff's work-related injuries. Plaintiff and Peters executed two written contingency fee agreements. Peters then hired Phillips, another attorney, as cocounsel. After winning the injury cases, plaintiff sued both attorneys for wrongfully withholding excessive attorney fees.

The appellate court found that Phillips, as an attorney whose services were obtained by the attorney retained by the client, could not become a party to the contractual relationship between the client and his retained attorney as a matter of law. Thus, plaintiff could not sue Phillips for the return of excessive fees. Based upon *Bounougias*, Grund argues that Chapski's only cause of action is against attorney Schiller, who retained him, not against Edith.

■ Initially, Chapski argues that Grund failed to raise the issue of his standing in the trial court and, therefore, waived the issue on appeal. (*Gentile v. Gentile* (1980), 87 Ill. App. 3d 311.) We disagree. The issue of Chapski's standing was specifically raised both in Grund's motion to dismiss the disputed fee petition and at the hearing. Therefore, this issue has not been waived.

■ Chapski next argues that he was hired by Schiller, who was Edith's agent and that, by her subsequent conduct spanning over 2½ years, she ratified the attorney-client relationship between them. Chapski asserted at trial that Edith called him constantly, and they often met to discuss the case. Chapski also testified that Edith told him she would see to it that he was paid for his services.

Edith testified that she was "satisfied" in a certain way with Chapski's services because he was a "good listener" to her. "I was desperate, and I was so afraid. I wanted to kill myself. You were very kind. You listened to me."

Chapski argues that *Hannah v. Hannah* (1968), 94 Ill. App. 2d 372, should control the issue of his standing. In *Hannah*, the husband executed an appearance consent for immediate hearing and directed his wife's counsel to appoint an attorney to represent him. The wife's attorney obtained an attorney on his behalf. The latter entered an appearance, signed the answer and other necessary documents, and appeared at the prove up. After judgment was entered, the husband moved to vacate, alleging that the attorney had no authority to represent him. The appellate court concluded that the attorney had implied authority to represent the husband and that his wife's attorney had acted as his agent to transmit such authority.

Chapski argues that, as in *Hannah*, Schiller was invested with the authority to hire him to represent Edith. He further asserts that, due to Edith's admission of giving Chapski's name to Schiller, it necessarily follows that Schiller had implied authority to hire him. Therefore, Edith is estopped to deny that Chapski was authorized to represent her.

Neither of the cases cited by the parties is sufficiently on point to control this issue. The facts of *Bounougias v. Peters* (1964), 49 Ill. App. 2d 138, are not particularly applicable to the instant case, where Edith supplied Schiller with Chapski's name as a Kane County divorce attorney. Further, Edith greatly depended on Chapski's services to deal with the uncertainties of the divorce process. Also, she told him that she would see to it that he was eventually paid. The trial judge's decision demonstrates that he believed this testimony of Edith.

Similarly, *Hannah v. Hannah* (1968), 94 Ill. App. 2d 372, does not factually resemble the present case. In *Hannah*, the husband executed a clear, unambiguous written consent and authorized his representation.

Finally, Chapski argues that where, as here, an express written contract is not entered into, there is generally an implied promise to pay reasonable compensation for services rendered by an attorney pursuant to the theory of *quantum meruit*. (*Greenbaum & Browne, Ltd. v. Braun* (1980), 88 Ill. App. 3d 210.) When the parties have not entered into an express contract, the court will generally find an implied promise to pay reasonable compensation for services rendered by the attorney under the theory of *quantum meruit*. *Greenbaum*, 88 Ill. App. 3d at 213.

Grund argues that Chapski may be entitled to attorney fees on a theory of *quantum meruit*, but only from Schiller, not Edith. This argument ignores the question of who ultimately benefitted from Chapski's services. Certainly, it was not Schiller. The evidence indicates that Chapski performed numerous hours of in-court and out-of-court service which furthered the completion of this litigation, a result which clearly benefitted Edith. Also, Edith's testimony underscores the value of Chapski's service to her, particularly during those times when she was confused by the divorce process. Grund's attempt to characterize Chapski's listening to Edith's concerns as somehow separate from the resolution of legal issues belies the nature of divorce actions. The tensions, confusions, and frustrations of the divorce process, often deeply felt by the parties, must on occasion be dealt with by the attorneys involved. It appears that Chapski performed this

necessary function well.

There is little question that in the instant case, there existed an implied promise by Edith to pay Chapski reasonable compensation for services rendered. It would, therefore, be inequitable for Edith to retain those benefits without paying a reasonable fee for them. (*Greenbaum*, 88 Ill. App. 3d at 213.) As a result, we find that Chapski has standing to pursue this action against Edith.

■ Next, Grund argues that the trial court's allowance of attorney fees was against the manifest weight of the evidence and an abuse of discretion. The decision regarding the allowance of attorney fees rests within the sound discretion of the court, whose award will not be overturned unless the court abused its discretion. *In re Marriage of McFarlane* (1987), 160 Ill. App. 3d 721.

■ Grund contends, among other things, that much of Chapski's time was not necessarily incurred, that numerous billed hours, particularly in regard to several temporary support orders, did not result in any benefit to Edith, that he spent an inexplicable number of hours telephonically conferring with cocounsel, that his in-court hours were essentially padded, that a number of hours were duplicative, and that Chapski charged too high an hourly rate for his services. Conversely, Chapski argues that his fees were justified by the complexity and time-consuming nature of the case. The marital estate assets were valued in the neighborhood of $5.5 million.

Originally, Chapski sought $20,289.95 in fees and costs. He testified regarding his reputation and experience, as well as the fairness and difficulties posed by this case. Nevertheless, the court, relying on its experience and knowledge of the value of legal services acquired in the discharge of its professional duties (*In re Marriage of Armstrong* (1982), 107 Ill. App. 3d 217, 219), reduced Chapski's fees to $14,929.95, approximately a 25% reduction. It is apparent that the trial court scrutinized Chapski's original fee petition and reduced the billable hours to accurately reflect the work he performed for Edith. The court found evidence of unnecessary time being applied, duplicative time incurred, and uncorroborated times, all of which reduced Chapski's fees. We find that the trial court's decision was neither against the manifest weight of the evidence nor an abuse of discretion.

■ Finally, Grund argues that the trial court erred in not disclosing the basis for its order. The cases he cites in support of this proposition, *In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38, and *Olsher v. Olsher* (1979), 78 Ill. App. 3d 627, do not require the trial court to make specific findings regarding fee awards.

From the record, it is evident that the court based its award of Chapski's attorney fees on a *quantum meruit* theory, which was thoroughly appropriate under these circumstances.

Also, the record indicates that there was a sufficient evidentiary basis upon which the court could base its decision. As noted above, it is apparent that in reducing Chapski's fees from $20,289.95 to $14,929.95, the court had carefully considered the evidence and reviewed the fee petition. Therefore, the trial court did not err when it did not make specific findings regarding fee awards.

Accordingly, we affirm the decision of the circuit court of Kane County.

Affirmed.

LINDBERG, P.J., concurs.

JUSTICE UNVERZAGT, dissenting:

The judgment should be reversed for two significant errors. First, the trial court refused to consider the attorney fees and costs paid Schiller and would not take into account the work done by that firm in evaluating the fee request and work done by Chapski. Secondly, Chapski clearly was not the lead counsel but at all times acted as local counsel to the Chicago lawyers involved, who had primary responsibility for the handling of the litigation.

The matter is a simple one. The husband sued the wife in Kane County seeking dissolution of marriage. Thereafter, the wife retained the Schiller firm, whose offices are in Chicago, and they, on her behalf, filed suit in the circuit court of Cook County for legal separation.

The Cook County suit was transferred to Kane County. Schiller, confronted with defense of a lawsuit some 45 miles and two counties removed from their office, sought local counsel.

The Code of Professional Responsibility provides that after accepting employment on behalf of a client, a lawyer shall not thereafter delegate to another lawyer not a partner or associate in his law firm the responsibility for performing or completing that employment without the client's consent. (107 Ill. 2d R. 2—109(b).) Apparently, pursuant to that rule, Schiller asked the wife if she knew a lawyer he could work with out in Kane County.

The wife, who did not know any lawyers, gave Schiller Chapski's name because a friend of hers gave her his name. Schiller sent Chapski a letter (which, at trial, Chapski could not locate) and a retainer

of $500. Prior to that date Chapski had neither met nor had any business dealings with the wife.

The wife testified that at one point Chapski complained to her that he wasn't paid anything, and she told him to call Schiller "because they hired you and they are responsible for the payment." When asked: "Was it your understanding that attorney Schiller was going to take care of attorney Chapski?" the wife testified, "Defeinitely [sic], because that is what he say [sic]."

Chapski was asked: "Did you contact Schiller or Mr. Wilcher of that firm relative to your fees?" and his response was: "I was advised I would be paid by Mr. Grund."

Chapski testified that at one point the wife asked Chapski to take over the case. She had discharged the Schiller firm and wanted Chapski to take over the case. Chapski testified: "I told her I did not want to have the reputation of being co-counsel where it ended up with.myself as sole attorney."

The wife then hired Grund to represent her, and shortly thereafter a property settlement was worked out. Grund substituted for the Schiller firm by order entered September 26, 1984. On that date a hearing was held on grounds for dissolution, and on October 9, 1984, an order was entered finding grounds for dissolution.

On October 16, 1984, the Schiller firm filed its "Petition for Award of Attorney's Fees and Costs." The petition itemized the services rendered by four Schiller attorneys. Attorney fees of $17,898.50 were requested for work commencing in June 1982, along with $7,500 in fees owed to a certified public accountant. No fees were requested in the petition for Chapski, and he was not named in the petition, although certain references were made to cocounsel in the itemization of services. Costs of $1,404.98 were also requested. A judgment was entered in favor of Schiller on its fee petition and against Donald Kosterka for attorney fees and costs of $9,500 on May 30, 1985.

On January 11, 1985, Chapski filed his "petition for award of attorney fees and costs," seeking fees of $20,200 and costs of $89.95.

In July 1985, Chapski filed a three-count complaint against Grund in the circuit court of Kane County. Count I alleged that Grund orally offered to pay Chapski $15,000 for services rendered by Chapski in the Kosterka dissolution proceeding. Count II, based on conversion, alleged Grund agreed to pay Chapski $15,000 out of the $47,000 received from Donald W. Kosterka and refused to do so. Count III alleged that Chapski was a third-party beneficiary of a contract for attorney fees entered into by Grund and asked for reason-

able attorney fees.

This lawsuit was consolidated with the dissolution litigation. On motion, counts II and III of the lawsuit were dismissed.

The consolidated suits came on for trial. At the conclusion of the trial, the court granted a directed finding as to count I of the lawsuit in favor of the defendant Grund and against Chapski. The court then entered judgment in favor of Chapski in the amount of $14,429.95 against Edith Kosterka and Donald Kosterka, unallocated, pending a hearing. The judgment recited: "That Attorney Grund having undertaken the payment of this obligation on behalf of the parties, this court need not allocate between the parties." The judgment against Donald is anomalous, since he had not been given notice of the proceedings on Chapski's petition.

It is from this order which Edith Kosterka and David Grund appeal.

Section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 508) provides that the court, from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own or his spouse's costs and attorney fees necessarily incurred in a dissolution proceeding. The operative words in context of this case would be "reasonable amount" and "necessarily incurred."

As we pointed out in *In re Marriage of Angiuli* (1985), 134 Ill. App. 3d 417, 423, "[a]n award of attorney fees is left to the court's sound discretion and will be reversed only for an abuse of that discretion. Factors to be considered by the court in determining what are reasonable fees are the attorney skill and standing, the nature of the controversy, the novelty and difficulty of the questions at issue, the importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary charge in the community and the benefits to the client. [Citation.]" It must be apparent that the fees sought were necessarily incurred, and more must be shown to justify a fee request than a mere compilation of hours and an hourly rate. *In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38.

In reading this file it is apparent that the trial court failed to completely evaluate the degree of responsibility involved in the management of the case, one of the crucial factors we enumerated in the *Angiuli* case and a factor of great importance in a case where more than one set of attorneys seeks a fee on behalf of one client.

It was important for the trial court to evaluate the total amount

of legal work done by the Schiller firm in order to determine the degree of participation of Chapski in the management of the entire case. This the trial court refused to do. Attorney Grund, in interrogating Chapski, asked if he was aware of the total time charges of the Schiller firm. This question was objected to, and the court sustained the objection. The court in explaining its ruling stated: "The only problem is you, don't have a represent[ative] [sic] of their office present as to what agreement they might have had with the client for which they can testify to, whether the work coincides, overlaps; the expertise, also, of the work that was performed by Mr. Chapski. There has been no testimony concerning any agreement as to division of fees and costs. So, as far as I am concerned what they have petitioned for and what they seek is irrelevant."

The fact of the matter is that there was testimony that there was no agreement on fees between the wife, Schiller and Chapski.

It appears to me that it was an abuse of discretion for the trial court not to consider the legal work accomplished, billed for, and collected for by the Schiller firm in evaluating the role played by Chapski and his entitlement to fees.

The other major error which I discern is the trial court's failure to determine the benefits to the client from Chapski's services where it is apparent on this record that he served as local counsel, and Chicago counsel were at all times lead counsel. Treating both the same for purposes of fixing a fee is, it seems to me, error.

The parties were owners of a substantial marital estate approaching $5,500,000 in valuation. The estate consisted of a business operated by the husband known as Album Graphics, Inc., valued in excess of $2 million; a stud farm tract of over 100 acres in Wayne, Illinois, along with some 40 horses, one of which was valued at $350,000 to $500,000; other investments, houses, furniture and furnishings.

One of the main legal problems faced by the parties was the valuation of the estate.

Chapski testified the business appraisal matters were primarily left to the Schiller firm. He did not secure real estate appraisals. He did not retain the services of any professionals such as accountants, appraisers, or actuaries to assist in making any of the appraisals. He testified that he did not carry the lead in developing that information.

Chapski was asked: "Would it be fair to say that relative to obtaining any of the valuations of any of the property in this case, that it was either Mr. Grund or his firm, or Mr. Schiller or a representa-

tive of his firm, who handled that portion of the case? He answered: "I know of nothing Mr. Grund did in that regard. I know during the time I was co-counsel with the Schiller firm, they were doing that." The question was then put to him: "My question to you is, did you do any of it?" His answer was: "No."

Obviously the valuation of the estate done either by Schiller or Grund and the settlement negotiations leading to the dissolution agreement handled by Grund were the crucial legal matters involved in the case. Both were handled by counsel other than Chapski, and that should have been taken into account in fixing his fees.

Chapski's own conduct did not indicate he was the lead attorney. He testified: "Well, her case was treated differently in the sense that I had—I believed I had a duty and obligation because I was associated with a firm of some reputation in Chicago that handled this case with—I don't want to use the words 'kid gloves,' but with undivided attention and that's what I gave Edith at every court appearance."

When the wife discharged the Schiller firm Chapski refused to take sole responsibility for the case. He did not have a fee agreement with the wife and never sent her a bill. Chapski discussed his fee request with Grund rather than the wife, and he sued Grund for the fees.

All in all, it is apparent Chapski, by his actions, considered himself subordinate to the lead counsel from Chicago. It was error for the trial court not to take these facts into account in determining the fees he fixed.

Further, neither the petition filed by Chapski nor his oral testimony furnishes an adequate basis for the award of the fees requested. See *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978.

For all of these reasons, I would reverse the judgment against the respondents and remand the matter for a new trial on these issues.