JOSEPH E. McHUGH, Plaintiff-Appellant, v. RICHARD OLSEN, Indiv. and as a General Partner of Farwell Partners Limited Partnership, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—88—1221

Opinion filed September 28, 1989.

Edward A. Cohen, of Block, Levy & Associates, of Chicago, for appellant.

Richard B. Edelman, of Law Offices of Brasch & Edelman, of Arlington Heights, for appellees.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff appeals from an order of the circuit court awarding him $4,100 plus costs as compensation for legal services he rendered to the various named defendants, both jointly and severally (hereinafter Olsen). Plaintiff contends that the trial court erred in not awarding him the $10,000 fee he requested, based either on a *quantum meruit* theory or an account stated theory.

This cause of action is based upon services performed in connection with three real estate transactions occurring between November 1985 and January 1986. It is undisputed that plaintiff, who had been practicing law for 25 years and concentrated his practice in real estate acquisitions, syndications and tax shelter investments, performed all the legal services for Olsen and the limited partnerships he formed in connection with these three real estate transactions. The dispute arises over the value of these services. Both parties agree that there was no express written contract for payment and that plaintiff agreed to discount the cost of his services because Olsen had been a friend of plaintiff's son. However, they disagreed about the terms of the informal agreement for payment.

Olsen testified that he first sought plaintiff's legal services in 1983 and at that time plaintiff indicated that he would charge no more than $100 per hour. Plaintiff provided legal services involving real estate transactions for Olsen on at least two occasions prior to the three transactions which are the subject of the case at bar. On those two occasions plaintiff sent Olsen a bill for his services upon the completion of that work. The bills stated the number of hours spent in connection with the work performed and the total amount due. According to these figures plaintiff's services were billed at a rate of $75 per hour on the first transaction and $88 per hour on the second transaction. Olsen paid these accounts in full.

Olsen further testified that when he contacted plaintiff in October 1985 in regard to the three real estate transactions which are the subject matter of this suit, he believed that the informal agreement for billing at about $100 per hour would still be honored. Thus, when he, in March 1986, received plaintiff's bill which had no accounting for time spent, he was of the opinion that the charge was unreasonable and refused to pay it.

Plaintiff, however, testified that he never proposed to Olsen an hourly rate for services. Instead, plaintiff testified that it had always been his policy to charge Olsen on the basis of the value of his services, and that he calculated the value of his services by factoring in his time spent, the complexity of the issues involved, and the typical costs of maintaining his practice. Plaintiff argues that he utilized this same method of billing when he billed Olsen $10,000 for the legal services he performed in connection with the three real estate transactions involved here. Specifically, he argues that he engaged in extensive negotiations with a savings and loan association regarding its loan commitment and that he prepared and reviewed numerous documents, including loan, wrap-around mortgage, assignment, escrow, and partnership agreement documents. Plaintiff states that the three transactions handled by him for Olsen involved real property valued at over $1.7 million. He also argues that his $10,000 fee, which took into account a 40% discount, was the reasonable value of his services based upon the time spent on these matters, the complexity of the transactions and the experience and legal knowledge that was necessary to successfully complete these transactions.

In an attempt to establish the value of his services, plaintiff introduced into evidence extensive testimony regarding the transactions and the services he performed. He established that two of the transactions involved the purchase of property by limited partnerships, while the third transaction involved the refinancing of property previously purchased by Olsen.

With regard to the first transaction, Olsen, the sole general partner, sought investors to form a limited partnership to purchase rental property at 1519-27 West Farwell in Chicago. After obtaining a commitment for financing through a lender, Olsen sought plaintiff's services to draft the limited partnership agreement and prepare or review all documents necessary to close the purchase of the property in the name of the limited partnership, Farwell Partnership. Plaintiff performed all the necessary legal services, and the closing on this property took place in November 1985.

The second transaction involved the refinancing of rental property

located at 1346-66 West Jarvis in Chicago. Olsen had previously purchased the property and requested plaintiff's advice in reviewing the documents necessary for refinancing the property with a different lender.

The third transaction involved the purchase of another rental property, 1500-04 West Farwell, by another group of investors organized by Olsen to form a second limited partnership. In this case Olsen already owned the property but wished to transfer ownership of the property to the newly formed limited partnership, of which he was the sole general partner. The second and third transactions, which were originally scheduled to close in December 1985, did not actually close until January 1986 due to certain documentation errors.

After all the closings on these transactions were successfully completed and after plaintiff prepared and delivered to Olsen the "closing books," which contained copies of all the pertinent documents in connection with these transactions, plaintiff forwarded to Olsen invoices for his legal services rendered. Plaintiff established that the first set of billing statements were sent to Olsen in March 1986, with monthly billings thereafter. These statements merely indicated that the amount due for legal services rendered in connection with the property at 1519-27 West Farwell was $3,500, the amount due for legal services rendered in connection with 1346-66 West Jarvis was $3,000 and the amount due for legal services rendered in connection with the property at 1500-04 West Farwell was $3,500. Plaintiff's statements did not provide a breakdown of the hours expended on the performance of legal services for any of the three real estate matters.

Plaintiff further testified that in August 1986, after Olsen repeatedly disregarded his requests for payment, he telephoned Olsen regarding the unpaid bills. At this time Olsen, for the first time, related his dissatisfaction with the amounts being requested by plaintiff. Plaintiff then provided Olsen with an oral explanation of his computation of the fees, and this explanation was accepted by Olsen. According to plaintiff, Olsen agreed to pay him a down payment of $3,000 and the balance in monthly installments. As evidence of this arrangement plaintiff submitted to the court a copy of a letter sent to Olsen in November 1986, which outlined the above arrangement for payment and also indicated that Olsen had continued to avoid fulfilling his obligation to pay for the services rendered.

Olsen's testimony with respect to the August telephone conversation contradicted plaintiff's evidence. Although Olsen admitted that a telephone conversation took place in August 1986, he denied that he agreed to pay plaintiff the full $10,000 fee as requested. Instead,

Olsen testified that he offered plaintiff $3,000 as payment in full. Olsen also admitted that he never attempted to pay plaintiff any amount for the legal services that were rendered.

In addition to the "closing books," the copies of the invoices for payment and plaintiff's letter to Olsen, the only other physical evidence admitted at trial were plaintiff's time slips, which indicated that in November and December 1985 plaintiff spent a total of 41 billable hours in connection with the three real estate transactions involved here. Plaintiff, however, maintained that his records were incomplete. He testified that he had spent in excess of 75 hours on the work he performed at the request of Olsen. He also argued that the time he actually spent did not reflect the true value of the services rendered, due to the complexity of the issues and the amount of legal sophistication that was necessary to properly complete these transactions. Olsen, on the other hand, challenged the 41 hours, arguing that the time slips were incomplete and duplicative.

To establish the true value of his services, plaintiff presented attorney Edward Puzzo as an expert witness. Puzzo began the practice of law in 1980 and concentrated his practice in the area of real estate law. He testified that, based upon his review of the "closing books," the complexity of the three real estate transactions involved in the case at bar required the legal services of an experienced professional and that the cost of such services in the community would range between $5,000 and $10,000 for each transaction, or a total amount of between $15,000 and $30,000. He also testified that he believed plaintiff's fee of $10,000 was reasonable, although he admitted that he had only inspected the documents contained in the "closing books," and that he did not know whether plaintiff was required to draft any of these documents or merely review them. Significantly, he testified that he had no knowledge of the amount of time plaintiff actually spent in relation to the three transactions.

After closing arguments, the trial court rendered its judgment in favor of plaintiff in the amount of $4,100 plus costs based on the theory of *quantum meruit*. Plaintiff appeals, contending that the trial court erred by failing to find that the actual value of his services was $10,000. In the alternative, plaintiff argues that the trial court erred by failing to find that there had been an account stated in the amount of $10,000.

█ █ An attorney who renders professional services has the right to be compensated for those services. (*Greenbaum & Browne, Ltd. v. Braun* (1980), 88 Ill. App. 3d 210, 410 N.E.2d 303.) Typically, an express or implied contract for services is the basis for the fee

charged. When, however, as in this case, a representation agreement is undisputed, but the evidence reveals that there was no "meeting of the minds" with regard to the fee arrangement, the trial court must determine a reasonable fee to be awarded. (*In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 484 N.E.2d 890.) The burden of proof is on the attorney to establish the amount of compensation rightfully due for the services. *In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 484 N.E.2d 890; *Greenbaum & Browne, Ltd. v. Braun* (1980), 88 Ill. App. 3d 210, 410 N.E.2d 303.

▇▇▇ The trial court may determine a proper fee award after considering such factors as the time and labor required, the novelty and difficulty of the issues, the skill required, the preclusion of other employment necessary to accept the case, the customary fee charged in the community, the amount of money involved in the case, the results obtained and the attorney's reputation, experience and ability. (*In re Estate of Healy*, 137 Ill. App. 3d at 409; *Mireles v. Indiana Harbor Belt R.R. Corp.* (1987), 154 Ill. App. 3d 547, 507 N.E.2d 129; *Simon v. Auler* (1987), 155 Ill. App. 3d 1000, 508 N.E.2d 1102.) The time spent on a case by an attorney is an important factor to be considered in the determination of the fee award. (*In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38, 429 N.E.2d 594.) Time records, although important, are not conclusive and should be scrutinized to determine whether they represent a reasonable expenditure of time in the context of the work performed. (*In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947.) The trial judge's experience and knowledge may be relied upon in determining what constitutes a proper expenditure of time, and the trial court's award of fees is not to be disturbed unless contrary to the manifest weight of the evidence. *In re Estate of Healy*, 137 Ill. App. 3d at 411.

In the case at bar it is undisputed that plaintiff is an attorney experienced in real estate law who rendered legal services to Olsen upon request, and that as a result of plaintiff's services, three real estate transactions were successfully completed. It is also undisputed that two of these transactions involved the formation of limited partnerships and the acquisition of property in the name of these newly formed partnerships. The complexity of the work required a skilled and experienced attorney for proper completion. It appears that plaintiff's legal work was satisfactorily completed, although there was minor complaint regarding the delay in the closings on the second and third transactions. Therefore, the major dispute before the trial court was the value of plaintiff's services.

A review of the record persuades us that the trial court resolved

this issue by determining that plaintiff was entitled to a billing rate of $100 per hour, multiplied by the number of hours that plaintiff spent on these matters, as reflected in his time records. Plaintiff testified that his records were incomplete, and the time spent on Olsen's matters exceeded the time recorded. He argues that the value of his services, irrespective of the number of hours actually expended, should be the standard used to determine a proper fee award. In support of this argument plaintiff's expert witness, Edward Puzzo, an attorney, testified that it would be customary within the community to charge between $15,000 and $30,000 for the legal services necessary to complete the type of real estate transactions involved in the case at bar. However, since Puzzo testified that he did not know whether plaintiff drafted or merely reviewed the documents examined by Puzzo, and that he had no knowledge of the amount of time plaintiff expended in the performance of his services in connection with the three real estate transactions, the trial court was not bound to accept Puzzo's testimony in its determination of what constituted a reasonable fee. (*In re Estate of Healy*, 137 Ill. App. 3d 406, 484 N.E.2d 890.) The trial court could have reasonably determined that the amount of time reflected in plaintiff's time records was a more appropriate basis for assessing fair compensation.

■ Based upon plaintiff's previous business dealings with Olsen, for which plaintiff charged Olsen less than $100 per hour, we are unable to find that the trial court abused its discretion when it determined that $100 was an adequate hourly billing rate. We are also unable to find that the trial court abused its discretion when it premised its fee award on the recorded time spent on the transactions by plaintiff and a billing rate of $100 per hour. Consequently, we do not find that the $4,100 fee award was against the manifest weight of the evidence.

■ ■ We reject plaintiff's argument that an account stated was created by Olsen's alleged acquiescence to plaintiff's explanation of the charges and Olsen's continued inaction. "An account stated has been defined as an agreement between parties who have had previous transactions that the account representing those transactions is true and that the balance stated is correct, together with a promise, express or implied, for the payment of such balance." (*W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1985), 132 Ill. App. 3d 260, 267, 477 N.E.2d 513.) Plaintiff argues, and Olsen does not dispute, that he sent monthly statements to Olsen from March 1986 to August 1986, and that Olsen failed to respond to those statements. In August 1986, plaintiff called Olsen to inquire about payment. The tes-

timony of the parties regarding the contents of that telephone conversation differs substantially: plaintiff testified that Olsen agreed to pay the entire amount, whereas Olsen testified that the parties agreed to payment of $3,000 in full settlement. We are not persuaded that an account stated was created because it appears that there was no mutual assent or meeting of the minds as to the correctness of the charges. The trial court was free to reject plaintiff's testimony that Olsen agreed to payment of the $10,000 during the parties' telephone conversation in August 1986. Whether an account stated exists is a fact question properly resolved by the trial court. (*La Grange Metal Products v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 1053, 436 N.E.2d 645.) Based on our review of the record, we conclude that there was sufficient evidence to support the trial court's failure to find an account stated.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

JIGANTI, P.J., and LINN, J., concur.