KALMAN S. LIEBERMAN, Plaintiff-Appellee, v. PAULA STOLLMAN, Defendant-Appellant.

First District (4th Division)   No. 1—90—2288

Opinion filed December 26, 1991.—Modified on denial of rehearing June 30, 1992.

Sheryl E. Fuhr and Ralph M. Bernstein, both of Ralph M. Bernstein & Associates, of Chicago, for appellant.

Kalman S. Lieberman, of Chicago, appellee *pro se*.

JUSTICE McMORROW delivered the opinion of the court:

Following a bench trial, the circuit court determined that defendant Paula Stollman (Stollman) owed plaintiff Kalman S. Lieberman (Lieberman) $22,000 in attorney fees for Lieberman's handling of a commercial real estate transaction on Stollman's behalf. On appeal, Stollman argues that the trial court's determination that Lieberman's services were reasonably valued at $22,000 was an abuse of discretion. Stollman also contends that the trial court erred in awarding Lieberman prejudgment interest, and in failing to direct that half of Lieberman's fees are due from the estate of Stollman's late husband.

Because we conclude that the evidence of record does not support the trial court's determination that Lieberman's handling of the commercial real estate transaction entitled him to fees in the amount of $22,000, we reduce the fee award to $11,515, which represents Lieberman's out-of-pocket expenses, plus the hourly charge for his services according to the number of hours he expended on the commercial real estate transaction. We also reverse the award of prejudgment interest, and affirm the court's entry of judgment against Stollman individually.

The evidence presented at the court's bench trial of the parties' dispute established that Stollman's husband passed away on November 9, 1986, and Stollman retained Lieberman's law partner, Howard Slater, to handle the probate of her late husband's estate. When Slater became ill, Stollman contacted Lieberman on July 16, 1987, to represent her in the sale of commercial real estate owned by Stollman

and her late husband. She informed Lieberman that she had received an offer of $825,000 for the property and that a contract would be forwarded to her shortly. Stollman advised Lieberman that she wanted to be very careful not to lose the offer because she was very interested in having the property sold. Lieberman told Stollman that he would handle the real estate transaction for a fee, and that it was necessary that he receive all documents as quickly as possible. Lieberman did not state a fee for this service, however, and Stollman did not inquire as to the amount Lieberman would charge for this legal representation.

On July 20 or 21, 1987, Lieberman received a sales contract from the broker of the proposed buyer. Finding numerous provisions that he believed inadequate, Lieberman discussed these matters with the broker. While searching through the files of his law partner, Slater, Lieberman found documents indicating that the property was in land trust and that the trustee had executed documents that deeded ownership in the property from the land trust to Stollman and her late husband. These documents had never been recorded, however. Lieberman returned the deeds to the land trustee so that the land trust could be reopened and the trustee could sign a contract for sale of the real estate. Lieberman also had discussions with the brokers and the tenant of the premises. In addition, he initiated investigation into the proper legal description of the property.

Lieberman learned from the brokers that there was a second potential buyer for the premises, and so advised Stollman. Stollman and Lieberman met at Lieberman's home on July 23 to discuss this second buyer. Stollman directed Lieberman to negotiate a higher price for the property, if he could. Based upon this direction from Stollman, Lieberman had a series of discussions with the brokers that culminated in an offer from the first buyer to purchase the commercial property for $875,000. During this time, Lieberman also prepared a letter for Stollman's signature directing the bank as land trustee to execute a sales contract. Thereafter, Stollman and her son, who was co-executor of the estate, signed the letter of direction at Lieberman's home. On August 4, Lieberman took the letter of direction to the land trustee and obtained the trustee's signature on the real estate contract. In this document, the property was to be sold to the first buyer for $875,000.

Lieberman also continued to investigate documents at the Torrens office with respect to the precise legal description of the property involved in the transaction. He performed a Torrens tax search and discovered that certain taxes had not been paid, and obtained the neces-

sary documents to remedy this deficiency. Thereafter Lieberman arranged for a survey of the property and prepared closing documents. Lieberman and the buyer's attorney went through a mock closing to ensure that all documents were in proper order. Closing of the transaction was held on November 2 and 3, 1989, which Lieberman attended. On November 4, Lieberman received two checks for Stollman representing proceeds of the sale. His out-of-pocket expenses were $135, and the handwritten time sheets he offered at trial indicated that he had spent 45.66 hours on the real estate transaction.

On November 4, Lieberman contacted Stollman and advised her that his fee for the transaction was $22,000. Lieberman informed Stollman that he expected her to pay the fee immediately, and Stollman agreed. A few days later, Lieberman sent Stollman a fee statement for $22,000. Stollman responded in a letter to Lieberman requesting a breakdown for this fee amount.

Lieberman's letter in reply advised Stollman that the $22,000 fee was based upon "the complexity of the matter that was involved, the number of hours that [he] had spent, the fact that [he] had alone increased the sale price *** and the fact that [he] had availed [himself] to [Stollman] at odd times by having [Stollman] come to [his] home to try to make things easier for [Stollman]." Lieberman also stated that his hourly charge was $250 per hour for "usual normal matters" and that the transaction had not been "a usual and normal matter." Lieberman also stated in his letter that he had been practicing law continuously since 1946 and that he "specialize[s] in real estate law, and [is] considered by other lawyers an expert in that field."

Stollman refused to pay the $22,000 amount, and Lieberman filed suit against her to recover his fee. In his suit, Lieberman requested the $22,000 attorney fee based upon *quantum meruit* (count I) and account stated (count II).

Lieberman testified that he has been licensed to practice law in Illinois since 1946, and has practiced law continuously during this time. His legal experience has been in the field of general practice and has included banking, real estate, and corporate work. Lieberman has been the attorney and director for a national bank and a savings and loan association.

Both parties presented expert witnesses at trial with respect to the reasonableness of Lieberman's $22,000 fee. Lieberman's expert, William Allen Nathenson, testified that based upon a hypothetical set of facts representing the work performed by Lieberman, it was his opinion "that the services were worth the $22,000." No additional testimony was presented by Nathenson.

Stollman's expert, Jack R. Hertz, testified that he had reviewed the documents involved in the real estate transaction. He said that, generally, an attorney advises a new client of his fee at the parties' first meeting, and that the fee will be either an hourly rate or a flat rate based upon the attorney's estimation of the number of hours involved. Hertz stated that in 1987, the usual hourly rate for attorneys in the Chicago metropolitan area for a senior partner in a law firm was approximately $150 an hour. He testifed that after reviewing the documents that were prepared and based upon his own experience, it was his opinion that "the transaction in this case had some complexity with respect to untangling the title, but nothing that a well-trained lawyer couldn't handle [and that he did] not consider that the transaction was overly complex." Hertz stated that absent an express agreement, it had no impact that Lieberman was able to negotiate a higher sale price for the property.

Hertz testified that in the event there has been no discussion as to an hourly rate or a set rate prior to the services having been rendered, it was his opinion that the lawyer should add up his hours and charge his hourly rate. He stated that in his experience, he had known of no attorney in the Chicago area who charged $250 per hour for a commercial real estate transaction in 1987. Hertz testified that, in his opinion, the real estate transaction in the instant cause would have required between 30 to 40 hours of attorney time and a few hours of paralegal time. Hertz also stated that, in his opinion, the reasonable fee for Lieberman's services fell within the range of $5,000 to $9,000.

The trial court determined that the evidence revealed the existence of an account stated between the parties (count II), that Lieberman was entitled to a reasonable amount for his services under principles of *quantum meruit* (count I), and that Lieberman's fee was reasonably set at $22,000. It also awarded Lieberman prejudgment interest based on Stollman's vexatious refusal to pay the fee. Stollman appeals.

Stollman challenges the trial court's award to Lieberman under both *quantum meruit* and account stated, and argues that the evidence at trial failed to establish that the $22,000 fee demanded by Lieberman was reasonable.

An account stated is an agreement between persons who have had prior transactions that the balance outstanding for those transactions is true, correct, due and owing. (*McHugh v. Olsen* (1989), 189 Ill. App. 3d 508, 545 N.E.2d 379.) Under the theory of account stated, however, the client is allowed to prove that the attorney's

charges are excessive, not justified by custom and usage, or otherwise unreasonable. (*Yowell v. Ringer* (1991), 217 Ill. App. 3d 353, 577 N.E.2d 468.) Under a theory of *quantum meruit* or account stated, the reasonableness of the attorney's fees is considered according to the following factors: the time, labor, and skill required, the novelty and difficulty of the issues, the preclusion of other employment, the fee customarily charged in the community, the amount of money involved in the case, the results obtained, and the attorney's reputation, experience and ability. (*Yowell*, 217 Ill. App. 3d 353; *McHugh*, 189 Ill. App. 3d 508.) It is the attorney's burden to produce evidence to prove that his fee was reasonable, and the fact finder's determination is subject to reversal on appeal if it is an abuse of discretion. *In re Estate of Callahan* (1991), 144 Ill. 2d 32, 578 N.E.2d 985.

■ Based upon our review of the record, we cannot say that the evidence presented by Lieberman proved that his request for a $22,000 fee was reasonable. According to Lieberman's handwritten time sheets, he expended 45.66 hours in his handling of the commercial real estate transaction. Lieberman testified that his usual and customary charge for such services was $250 per hour. Lieberman's hourly charge, multiplied by the number of hours expended, equals $11,415. His out-of-pocket expenses were $135, for a total of $11,550.

Lieberman presented no evidence to demonstrate why he was entitled to the additional sum of $10,450, for a total attorney fee of $22,000. His expert testified that the $22,000 fee was "reasonable," but gave no testimony to specify reasons for this increased valuation of Lieberman's services in handling the real estate transaction. We cannot say that the transaction at issue herein was of such a complex nature that Lieberman was deserving of a significantly increased fee. We also are unable to conclude that Lieberman was entitled to a higher fee because he had negotiated an increase in the sales price of the property. Moreover, we are not prepared to hold that Lieberman's decision to allow Stollman to meet with him in his home should entitle Lieberman to an increased fee for the services he provided.

In light of the factors set forth above regarding reasonableness of attorney fees, and in view of the testimony of record presented in the instant cause, we conclude that Lieberman's services warranted attorney fees in the amount of $11,550. Accordingly, the judgment of the trial court is modified to reflect an award of $11,550 to Lieberman.

Because the attorney fee award is reduced, we conclude that Lieberman is not entitled to prejudgment interest for Stollman's vexatious refusal to pay his attorney fees, and the trial court's award of prejudgment to Lieberman is hereby reversed. See, *e.g., Schulz v.*

*Rockwell Manufacturing Co.* (1982), 108 Ill. App. 3d 113, 438 N.E.2d 1230.

■■ Stollman also claims that she should not be held solely liable for Lieberman's fee, because Lieberman's handling of the real estate transaction also included legal services provided to the estate of her late husband. Stollman testified at trial that she agreed to pay Lieberman's attorney fees with respect to the commercial real estate transaction. There is nothing in Stollman's trial testimony to indicate that she intended that Lieberman's attorney fees would be paid from the estate of her late husband. Consequently, we find no abuse of discretion in the trial court's entry of judgment against Stollman for the full amount of Lieberman's reasonable attorney fees. We express no opinion with respect to whether the estate of Stollman's late husband is or should be liable for any or all of Lieberman's reasonable attorney fees.

For the reasons stated, the trial court's judgment is affirmed in part as modified, reversed in part, and affirmed in part.

Affirmed in part as modified; reversed in part; affirmed in part.

JIGANTI, P.J., and JOHNSON, J., concur.