MOBIL OIL CORPORATION, Plaintiff-Appellee, v. MARYLAND CASUALTY COMPANY *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—96—0351

Opinion filed May 9, 1997.

744

Kiesler & Berman, of Chicago (John J. Piegore and Robert L. Kiesler, of counsel), for appellants.

Peter D. Kasdin, Ltd., of Chicago (Regina Picone Etherton, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendants Maryland Casualty Company (Maryland) and Northern Insurance Company of New York (Northern) appeal the circuit court's grant of summary judgment in favor of plaintiff, Mobil Oil Corporation (Mobil), finding defendants liable for Mobil's attorney fees pursuant to section 155 of the Insurance Code (215 ILCS 5/155(1) (West 1992)) (section 155) and awarding Mobil $442,762 in such fees. Mobil incurred these fees in two separate actions: a tort claim in which Maryland, after initially agreeing to defend Mobil under two liability insurance policies, later disputed the policy limits and advised Mobil to retain separate counsel, which it did; and a declaratory judgment action, in which Mobil claimed that the policies obligated defendants to indemnify Mobil for any liability incurred in the tort claim.

The insurance policies were purchased by a third party, B.M.W. Constructors, Inc. (B.M.W.), the named insured, as part of a contract for the repair of a flare system at Mobil's oil refinery in Joliet, Illinois. The contract required B.M.W. to obtain liability insurance that would cover any work performed by B.M.W. at the refinery. For liability stemming from bodily injury, B.M.W. was required to obtain a minimum of $250,000 in coverage for each occurrence and a minimum of $500,000 in aggregate coverage. The contract also required that B.M.W. obtain liability insurance naming and covering Mobil and any of Mobil's affiliates, under the policies "as their interests may appear."

B.M.W. procured the insurance from its insurance representa-

tive, with coverage to be provided by Northern, a subsidiary of Maryland. The policies provided coverage for general liability, automobile liability, and excess liability. The general liability policy offered $1 million in coverage for each occurrence and a maximum of $6 million in coverage for aggregate liability. The excess liability policy provided up to $5 million in coverage. In July 1988, B.M.W. sent Mobil the certificate of coverage received from Northern for these policies, as required by Mobil's contract with B.M.W. The certificate listed B.M.W. as the insured party and added Mobil "as an additional insured as their interests may appear." The certificate made no reference to the contract between B.M.W. and Mobil.

On September 17, 1988, two B.M.W. employees, Steve Cibulskis and Marvin Lamar, were injured as they performed repair work at the Joliet refinery. They and their spouses filed suit against Mobil in the circuit court of Cook County, No. 90—L—3410 (Cibulskis lawsuit). Mobil tendered its defense to Maryland which, in April 1989, unconditionally accepted Mobil's tender, hired a law firm to defend the Cibulskis lawsuit, and informed the law firm that, under the general liability policy, Mobil was entitled to up to $2 million in coverage.

In a subsequent letter to one of the underlying plaintiff's attorneys, Maryland's claim representative stated that Maryland had accepted Mobil's tender of its defense and that further correspondence regarding the claim should be forwarded to Maryland.

The parties to the Cibulskis lawsuit spent the next few years conducting discovery and preparing for trial. Maryland's trial attorney settled with Lamar, who was not severely injured, and continued to prepare for the claims by Cibulskis and his wife. In a response to one of the underlying plaintiffs' interrogatories regarding insurance coverage, Mobil's answers, prepared by Maryland's appointed defense counsel, stated that Mobil was covered by two insurance policies, with policy limits of $1 million and $5 million, which was submitted to those plaintiffs by Maryland's trial attorney on April 15, 1991. In two pretrial reports, Maryland's trial attorney recommended that the Cibulskis' case be settled for approximately $1.5 to $2 million.

After extensive discovery had been completed, with some 33 depositions taken and expert witnesses engaged, Maryland told Mobil in a letter dated December 16, 1991, that the insurance policies provided Mobil with only $250,000 in coverage, because the contract between Mobil and B.M.W., mentioned that sum. That contract was never made part of the rider or policy. Maryland further advised Mobil to retain its own defense counsel in the Cibulskis lawsuit to protect

its interests in the event that Mobil's liability for the claim exceeded $250,000. On February 6, 1992, Mobil responded to Maryland's letter, noting that it was entitled to the full amount of coverage, $6 million, as an additional insured under the insurance policies. In a written reply, Maryland reiterated its position that Mobil was entitled only to $250,000 in coverage.

Mobil hired its own attorney for the Cibulskis lawsuit on March 24, 1992, who filed a complaint against Maryland, Northern, and B.M.W. in chancery, seeking a declaration that the insurance policies provided full coverage to Mobil as an additional insured and obligated the above-named defendants to indemnify Mobil in the Cibulskis lawsuit. Mobil also filed a third-party complaint against B.M.W., which was dismissed.

On March 12, 1993, Maryland wrote Mobil stating, in effect, that the insurance company had reconsidered its position and agreed to provide Mobil full coverage under the insurance policies.[1] Maryland refused, however, to pay any legal fees already incurred by Mobil's attorneys in the Cibulskis lawsuit.

Mobil's attorney continued to prepare for trial. She repeatedly disagreed with Maryland's trial attorney regarding how and when the Cibulskis lawsuit should be resolved. Mobil's attorney sent several letters to this trial attorney, asking him to settle the lawsuit, because Mobil believed that a trial judgment might exceed the policy limits. The first letter, dated February 15, 1993, asked the attorney to accept the Cibulskis' offer to settle the case for $5.5 million, because they planned to seek punitive damages at trial which, if awarded, might be much higher than the current settlement offer.[2] A letter sent on May 14, 1993, by Mobil's attorney requested that Maryland accept the reduced offer of $3,750,000. A third letter, dated June 14, 1993, asked that Maryland accept a $2,250,000 offer, and accused Maryland of acting in bad faith by refusing to settle the case, asserting that Mobil could be subject to much greater liability if the case proceeded to trial. On July 30 and August 23, 1993, Mobil sent let-

---

[1]An affidavit by one of Maryland's attorneys states that the company adopted a different position after B.M.W.'s chief of financial operations refused to sign an affidavit to the effect that B.M.W. intended to provide Mobil with only $250,000 in insurance coverage. According to the attorney's affidavit, B.M.W.'s refusal to cooperate stemmed from the fact that B.M.W. relies on Mobil for up to $10 million worth of business each year, which Mobil denied, claiming it was not signed because the statements set forth in the affidavit were untrue.

[2]The Cibulskis' complaint ultimately was amended with leave of court to include a claim for punitive damages, on the eve of trial.

ters to Maryland's attorneys in the declaratory judgment action, warning that Mobil would sue Maryland for any amount awarded to the Cibulskis that exceeded the policy limits.

In an August 6, 1993, letter, Maryland assured Mobil that it was willing to negotiate a fair and reasonable settlement but disputed Mobil's contention that it should be responsible for paying any punitive damage award. On August 23, Mobil responded by asking why Maryland refused to accept the Cibulskis' most recent settlement offer of $2 million. Mobil's attorney reminded Maryland that its own trial attorney had recommended a settlement in the area of $2 million and had concluded that the case should be settled.

On August 27, 1993, after the circuit court held a pretrial conference with the parties to the Cibulskis lawsuit, Mobil's attorney again wrote Maryland requesting that it accept the Cibulskis' settlement offer, which now stood at $1,800,000. The attorney noted the court's comment that $2 million was a reasonable settlement offer in light of the evidence that would be presented at trial. The attorney further accused Maryland of acting in bad faith by refusing to settle the case and again threatened to sue Maryland if a judgment against Mobil exceeded the policy limits. The case went to trial that day. Several days later, on September 2, 1993, Maryland's trial attorney finally agreed to settle the case for $1.75 million.

In the declaratory judgment action against Maryland and Northern, Mobil filed an amended complaint just before the Cibulskis lawsuit was settled. Count I alleged that defendants Maryland, Northern, and B.M.W. were obligated to indemnify Mobil in the Cibulskis lawsuit and must pay for the costs of trial and any settlement or judgment entered against Mobil. Count II stated a claim against B.M.W. for breach of contract, seeking as damages the attorney fees and costs incurred by Mobil in defending the Cibulskis lawsuit and litigating the declaratory judgment action.

The circuit court granted B.M.W.'s motion to dismiss Mobil's amended complaint as to B.M.W. Mobil moved for summary judgment against Maryland and Northern, seeking payment of attorney fees pursuant to section 155 of the Insurance Code. Mobil asserted the language of the insurance policies unambiguously established that the insurance defendants had a duty to indemnify Mobil for up to $6 million in liability.

After the Cibulskis lawsuit was settled, with Maryland paying the costs of the settlement, the circuit court chancery division transferred the case to the law division, the only remaining issue being Maryland's liability to Mobil for Mobil's attorney fees. Mobil unsuccessfully moved for leave to file a jury demand, which was

found to be untimely. Maryland moved to dismiss Mobil's complaint. Mobil's summary judgment motions for attorney fees were still pending.

At a hearing on the motions before the law division court, Mobil argued that Maryland's attorneys in the Cibulskis lawsuit were placed in a conflicting position when Maryland changed its position on the coverage issue, by reducing it to $250,000, which potentially prevented them from zealously defending Mobil, and by Maryland's assertion that the policy did not cover punitive damage awards. Maryland urged the record offered no evidence to support an inference that Maryland's attorney did not vigorously defend the suit. Maryland further argued that it acted in good faith when it refused to settle the case until the Cibulskis made a more reasonable settlement demand.

Finding that the facts of the case were not in dispute, the circuit court denied Maryland's motion to dismiss and granted Mobil's summary judgment motion. The court determined that Maryland's position limiting the extent of coverage to $250,000 could have affected its trial attorney's decision not to settle the lawsuit and to chance a not-guilty verdict at trial. The court observed that such a position conflicted with Mobil's, which now faced potential liability for any damages arising above $250,000, as well as being subject to punitive damages in a significant amount, thereby impelling Mobil to seek settlement of the Cibulskis' claim. Therefore, two sets of counsel were needed to represent the conflicting interests of Maryland to try the case and Mobil to settle it. The court further found that Maryland acted in bad faith when it changed its position on the policy limits issue and limited Mobil to only $250,000 in coverage. The court held that Maryland was liable for attorney fees incurred by Mobil in both the Cibulskis lawsuit and the current declaratory action. The court subsequently denied Maryland's motion to reconsider its ruling.

The circuit court next discussed the issue of the amount of attorney fees for which Maryland should be held liable. Inviting the parties to suggest the procedure to be followed in resolving that issue, the court thereafter announced that it would review Mobil's claim for fees, Maryland's objections to those fees, hold a hearing with respect to the fees, and thereafter enter a ruling. Maryland was invited to make any objection to this procedure but stated through its counsel that it had none.

In documents submitted to the circuit court, Mobil claimed its attorneys billed $461,143 for work performed both in the Cibulskis lawsuit and in the current declaratory action. The court convened a

hearing on Mobil's petition for attorney fees and Maryland's objections thereto. Both parties were invited to present any further support for their respective, previously filed submissions; each elected to stand upon its documents. Mobil's counsel represented to the court that she was Mobil's trial lawyer in the underlying personal injury case, the chancery division aspect of the case, and the law division phase of the case and had personal knowledge as to almost everything asserted. Maryland made no effort to adduce any testimony from this, or any other, Mobil attorney as to the amount of fees claimed and offered no testimony of its own. Maryland made 10 specific, written objections to these claims. The court sustained several of Maryland's objections, struck 127 hours of work from Mobil's claim, and entered judgment in the amount of $442,762.93. Maryland appeals.

## I

The parties disagree on the appropriate standard of review to be applied in this case. In deciding the summary judgment motion, the circuit court was authorized to consider the pleadings, affidavits, deposition transcripts, and other evidentiary documents in order to determine whether the parties presented a genuine issue of material fact. 735 ILCS 5/2—1005(c) (West 1994); *In re Estate of Davis*, 225 Ill. App. 3d 998, 1000, 589 N.E.2d 154 (1992). Summary judgment will be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

■ In the present case, the circuit court considered the issue of whether Maryland was liable for attorney fees as a matter of law under section 155. The court properly so considered this aspect of Mobil's motion for summary judgment, and appellate review of its order granting Mobil's motion is *de novo*. *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.*, 285 Ill. App. 3d 201, 209, 673 N.E.2d 369 (1996); *Outboard Marine*, 154 Ill. 2d at 102; *Zoeller v. Augustine*, 271 Ill. App. 3d 370, 374, 648 N.E.2d 939 (1995).

## A

■ Maryland first argues that it was not liable as a matter of law for attorney fees incurred by Mobil in the Cibulskis lawsuit after Maryland informed Mobil of the policy limits dispute. Section 155 of the Insurance Code provides for the award of attorney fees in cases where the insurer caused "an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable." 215 ILCS 5/155(1) (West 1992). An insurer is not li-

able for attorney fees under section 155 merely because it litigated, and lost, the issue of insurance coverage. *Buais v. Safeway Insurance Co.*, 275 Ill. App. 3d 587, 591, 656 N.E.2d 61 (1995) (*Buais*); *Myrda v. Coronet Insurance Co.*, 221 Ill. App. 3d 482, 489, 582 N.E.2d 274 (1991) (*Myrda*). If the insurer is found to be vexatious and unreasonable in refusing to defend a claim, however, section 155 authorizes the court to award fees and costs. *Buais*, 275 Ill. App. 3d at 591; *Shell Oil Co. v. AC&S, Inc.*, 271 Ill. App. 3d 898, 909, 649 N.E.2d 946 (1995) (*Shell Oil*). The determination of whether an insurer's actions are vexatious and unreasonable must be determined after examining the totality of circumstances. *Green v. International Insurance Co.*, 238 Ill. App. 3d 929, 935, 605 N.E.2d 1125 (1992). To be considered are the insurer's attitude, whether the insured was forced to file suit to recover, and whether the insured was deprived of the use of its property. If a *bona fide* dispute existed regarding the scope of the insurance coverage, an insurer's delay in settling the claim may not violate section 155. *Verbaere v. Life Investors Insurance Co.*, 226 Ill. App. 3d 289, 297-98, 589 N.E.2d 753 (1992) (*Verbaere*).

It is undisputed in this case that Maryland initially agreed to defend Mobil and acknowledged that Mobil was entitled to full coverage under the insurance policies. Mobil hired separate legal counsel only after Maryland decided, two years and eight months after first agreeing to defend Mobil unconditionally, that the policy limits were $250,000 instead of $6 million. Maryland even suggested that Mobil retain its own attorney in the underlying suit.

Maryland argues that a *bona fide* dispute existed regarding the extent of Mobil's coverage, claiming it relied on B.M.W.'s assertion that it never intended to provide Mobil with more than $250,000 in coverage, but did so because B.M.W. later refused to sign an affidavit stating its intentions. Maryland contends that the certificate of insurance supports this argument because it states that Mobil is insured only "as their interests may appear." Based upon this evidence, Maryland claims the insurance policies were subject to reformation to reflect the true intentions of the parties, which assertedly were to provide only $250,000 in coverage. Alternatively, Maryland argues that a *bona fide* dispute existed regarding whether Mobil was entitled to any coverage, noting that Mobil was not listed as an additional insured in the insurance policy and the insurance representative never told Maryland that Mobil was to be named as an additional insured.

Maryland offered little, if any, evidence to support either argument and cannot show that a *bona fide* dispute existed over the coverage issue. Regarding the first contention, the only proffered evidence

of B.M.W.'s intention to limit coverage is an unsigned affidavit, prepared by Maryland itself, which is insufficient to establish the existence of a *bona fide* dispute in light of the absence of any language in the insurance policy expressing this intent. In addition, there is no evidence to suggest that the phrase "as their interests may appear," contained in the certificate of insurance and the underlying contract, established any basis upon which to limit Mobil's coverage.

■ When an insurer acknowledges providing insurance pursuant to a contract between the insured and a third party, the contract is incorporated into the policy and the documents are "construed together to determine the parties' intention." *Continental National America Insurance Co. v. Aetna Life & Casualty Co.*, 186 Ill. App. 3d 891, 896, 542 N.E.2d 954 (1989). In this case, the contract required B.M.W. to provide *at least* $250,000 in coverage to Mobil. Neither this requirement nor the phrase "as their interests may appear" precluded B.M.W. from obtaining more than $250,000 in coverage for Mobil or the policy itself from providing more than $250,000 in coverage. Moreover, language found in the certificate of coverage did not establish the limits of Mobil's rights under the policies (*Pekin Insurance Co. v. American Country Insurance Co.*, 213 Ill. App. 3d 543, 547, 572 N.E.2d 1112 (1991); *Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance Co.*, 121 Ill. App. 3d 954, 957, 460 N.E.2d 475 (1984)), but merely stated the terms of the policy and the policy limits applicable to the insured. The policies themselves provided up to $6 million in coverage and contained no language limiting coverage for additional insureds. If Maryland truly intended to limit coverage, it readily could have done so by adding its own restrictive language to the insurance polices. *J.A. Jones Construction Co. v. Hartford Fire Insurance Co.*, 269 Ill. App. 3d 148, 151, 645 N.E.2d 980 (1995).

■ Nor is the remedy of reformation applicable here, and Maryland's reliance on *Zannini v. Reliance Insurance Co. of Illinois, Inc.*, 147 Ill. 2d 437, 590 N.E.2d 457 (1992) (*Zannini*), in this regard is misplaced. In *Zannini*, plaintiff's insurance agent agreed to obtain coverage for his jewelry, but inadvertently failed to provide a schedule of the jewelry to the insurer. The policy issued to plaintiff made no provision for jewelry loss coverage. 147 Ill. 2d at 444. Holding that the insurance agent possessed express authority to bind coverage on behalf of the insurer, the court reformed the contract to include coverage for jewelry intended to be scheduled. 147 Ill. 2d at 451, 456. The facts of *Zannini* are inapposite to the present case. Maryland offered no evidence to show that the parties intended to provide Mobil with only $250,000 in coverage or that the parties mistakenly

obtained $6 million in coverage on behalf of Mobil. Before a court may reform an instrument on the ground of mistake, the mistake must be of fact and not of law, common to both parties, and in existence at the time of the execution of the instrument. 147 Ill. 2d at 449. Maryland therefore was not entitled to reformation of the insurance policy.

■ Further, Maryland provided no evidence to prove that it did not know Mobil was an additional insured under the policies. To the contrary, Maryland knew the insurance policy issued to B.M.W. also covered Mobil as an additional insured; initially agreed to defend Mobil in the Cibulskis suit, without limitation; Maryland instructed its trial attorney that Mobil was fully insured by Maryland; and Maryland's attorney prompted Mobil to state in a sworn answer to an interrogatory that it was insured by Maryland under two multimillion dollar policies. Based on this undisputed evidence, all the parties believed that Mobil was entitled to receive the full amount of coverage. It was not until much later that Maryland informed Mobil its coverage was limited to $250,000. Maryland failed to contradict or rebut these facts and could not have raised a *bona fide* dispute on the coverage issue.

Maryland's conduct in asserting the existence of a coverage dispute is relevant, however, to the circuit court's decision awarding section 155 attorney fees. *Buais*, 275 Ill. App. 3d at 591. When an underlying complaint presents an issue of potential insurance coverage, and the insurer believes that the policy does not cover the claim, the insurer may not refuse to defend the insured, but must either defend the suit under a reservation of rights or seek a declaration of no coverage. *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 207-08, 579 N.E.2d 322 (1991); *J.A. Jones*, 269 Ill. App. 3d at 151. An insurer failing to act in either fashion, where a court finding determines wrongfully denied coverage, is estopped from raising policy defenses to coverage in a subsequent action. *Waste Management*, 144 Ill. 2d at 208; *J.A. Jones*, 269 Ill. App. 3d at 151.

■ Maryland contends that it reserved its rights when it first informed Mobil that it planned to limit coverage to $250,000. A reservation of rights must adequately inform the insured of the rights that the insurer intends to reserve. A notice of a reservation of rights must make specific reference to the policy defense to be asserted by the insurer and to the potential conflict of interest. *Royal Insurance Co. v. Process Design Associates, Inc.*, 221 Ill. App. 3d 966, 973, 582 N.E.2d 1234 (1991). A proper reservation allows the insured to decide intelligently whether to hire independent counsel in order to avoid

the conflict or not. *Royal*, 221 Ill. App. 3d at 973. Further, the notice must clearly inform the party of what right or rights are being reserved.

Maryland's delayed announcement of the amended policy limits, in the middle of pretrial litigation in the underlying claim, did not constitute an adequate reservation of rights. Maryland initially agreed to defend Mobil unconditionally; Mobil had the right to believe that it was fully covered under the insurance policies and did not consider obtaining its own counsel to defend the Cibulskis lawsuit. Maryland's subsequent change of position created a potential conflict of interest for the trial attorney it hired to defend Mobil. With a multimillion dollar insurance policy available, its attorney could enter into settlement negotiations with plaintiffs and avoid risking a large judgment at trial. Conversely, after learning that Mobil was entitled to only $250,000 in coverage, the attorney could hazard taking the case to trial and seek a judgment favoring Mobil, since Maryland's now reduced exposure amounted to a relatively small fraction of the Cibulskis' claim. This latter strategy could have backfired, resulting in a large judgment that would have exceeded coverage limits and for which Mobil, and not Maryland, would have been liable. By failing to inform Mobil promptly of the potential coverage dispute, Maryland deprived Mobil of the opportunity to obtain its own counsel at the outset of the litigation and avoid the potential conflict of interest.

As Maryland failed to reserve its rights properly, and created a potential conflict of interest for its trial attorney by waiting $2^1/2$ years before raising the questioned coverage limits, Maryland was estopped from later claiming that it was not obligated to fully indemnify Mobil under the insurance policies and therefore could not have raised a *bona fide* policy defense. The circuit court had the authority to consider Maryland's delay in asserting coverage to be vexatious and unreasonable as a matter of law and conclude that Mobil was entitled to attorney fees under section 155 for the period in which Maryland disputed the coverage to be provided.

Maryland claims that it relied on the advice of its attorneys in believing that its coverage position was "well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," in compliance with Supreme Court Rule 137. 155 Ill. 2d R. 137 (Rule 137). Mobil sought attorney fees under section 155 of the Insurance Code, however, not under Rule 137. The two provisions for attorney fees apply to different types of conduct. Section 155 allows parties to seek attorney fees from insurance companies whose delay of coverage is vexatious and

unreasonable because there is no *bona fide* dispute over coverage. The language contained in Rule 137 is inapplicable.

B

Maryland next insists that it should not be liable for services rendered by Mobil's attorney after it ended the dispute over coverage. Although the parties no longer contested that issue, the punitive damages claim in the Cibulskis lawsuit created a new conflict of interest for Maryland's trial attorney, which could be resolved only by hiring additional counsel to represent Mobil's interests. This conflict was present because Maryland claimed it was not obligated to pay any punitive damage award. There was less incentive, therefore, for Maryland to settle the case, while Mobil had a greater desire to settle the case to avoid paying a large judgment that might not be covered by its insurance.

■ Maryland was obligated to pay for counsel hired by Mobil to protect its interests after Maryland's attorney was faced with a conflict of interest. An insurer's duty to defend necessarily includes the right to control the litigation. *Nandorf, Inc. v. CNA Insurance Cos.*, 134 Ill. App. 3d 134, 136, 479 N.E.2d 988 (1985) (*Nandorf*). The attorney hired by the insurer is a fiduciary of both the insurer and the insured. 134 Ill. App. 3d at 137. In cases involving conflicting interests, the attorney hired by the insurer may not also represent the insured absent full disclosure and consent. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 194, 355 N.E.2d 24 (1976) (*Peppers*). When a conflict of interest arises, the insured is entitled to retain independent counsel, to be paid for by the insurer. *Peppers*, 64 Ill. 2d at 199; *Nandorf*, 134 Ill. App. 3d at 137.

■ A conflict of interest exists if the interests of the insurer would be furthered by providing a less than vigorous defense to the allegations against the insured. *Nandorf*, 134 Ill. App. 3d at 137. There, the insurer defended Nandorf, but reserved its rights to deny coverage for punitive damages. 134 Ill. App. 3d at 135. The court found that although the insurer and Nandorf shared a common interest in a verdict in favor of Nandorf if the latter was held liable, the insurer's interests would have been served best by a small compensatory damage award and a large punitive damage award. This conflicting interest, and the fact that the request for punitive damages formed a substantial part of the claim, entitled Nandorf to independent counsel. 134 Ill. App. 3d at 138-39.

Similarly, in this case, Maryland's and Mobil's interests diverged on the liability and punitive damages issues. Attorneys for both Mobil and Maryland acknowledged that Mobil probably would be found

liable if the case went to a jury and that the judgment could include a large punitive damage award. It was in Mobil's best interest, then, to settle the case quickly and avoid the risks posed by a jury trial. Contrarily, because the probability that the compensatory damages portion of the claim would have exhausted the newfound policy limits[3] , Maryland would have lost nothing by letting the case go to the jury, if the Cibulskis did not agree to a settlement acceptable to Maryland.

The conflict presented in this case is further evidenced by the communications between the attorneys. Counsel hired by Mobil repeatedly pleaded with Maryland's trial attorney to settle the case. Maryland's attorney refused several settlement offers made by the Cibulskis although the attorney previously had indicated that the case should be settled for the amount being suggested by those plaintiffs. Maryland's attorney waited until near the end of trial, just before closing arguments, before settling the underlying case.

The conflict of interest faced by Maryland's attorney demonstrably established the need for an independent counsel to represent Mobil's interests. Because it had a contractual obligation to provide Mobil with a viable defense, Maryland must pay attorney fees incurred by Mobil in the Cibulskis lawsuit. *Peppers*, 64 Ill. 2d at 199; *Nandorf*, 134 Ill. App. 3d at 136.

## C

■ Next, Maryland argues that it should not have been ordered to pay Mobil's attorney fees for the period after the parties settled the Cibulskis lawsuit, because its conduct during that time was neither vexatious nor unreasonable. When an insured must bring a declaratory action against the insurer to enforce its right to coverage in an underlying lawsuit, the insured may recover section 155 attorney fees incurred in both the underlying suit and the declaratory action. *Shell Oil*, 271 Ill. App. 3d at 909; *Verbaere*, 226 Ill. App. 3d at 300; *Hall v. Svea Mutual Insurance Co.*, 143 Ill. App. 3d 809, 813, 419 N.E.2d 1102 (1986). In addition, the insured may recover attorney fees incurred on appeal. *Verbaere*, 226 Ill. App. 3d at 302; *Hall*, 143 Ill. App. 3d at 813. Mobil was forced to bring a declaratory judgment action after Maryland reversed its coverage position, which was found to be vexatious and unreasonable. The circuit court properly ordered Maryland to pay the full costs of the declaratory judgment action, including the portion of the action that took place after the underlying suit was settled.

---

[3]Cibulskis' actual medical expenses alone exceeded $250,000.

## II

■ Maryland next disputes the amount of attorney fees awarded Mobil. After granting Mobil's summary judgment motion as to liability for payment of attorney fees at a hearing, the circuit court asked the parties for suggestions as to how to proceed on the damages portion of the case. A colloquy between court and counsel ensued, the court suggesting a procedure to decide the amount of damages. The court then specifically asked Maryland's counsel if he objected to this procedure, to which he responded in the negative. The court asked the parties to submit documents that would aid in calculating reasonable attorney fees. Mobil submitted extensive billing statements. Mobil's attorney, who attended the case at every stage, represented to the court her ability to assist in providing information to the court based upon personal knowledge. Maryland submitted written objections to portions of the billing statements but offered no witnesses. The court considered Maryland's written objections and sustained some of them when it reduced the amount sought by Mobil.

The amount of fees to be awarded was a factual question that the circuit court left to further evidentiary presentation and argument, after finding liability on summary judgment. Since that amount was decided by the court acting in its discretion as trier of fact, and not on summary judgment, the award of the amount of attorney fees is reviewed under the clear abuse of discretion standard. *Shell Oil*, 271 Ill. App. 3d at 909; *Garcia v. Lovellette*, 265 Ill. App. 3d 724, 727-28, 639 N.E.2d 935 (1994); *Myrda*, 221 Ill. App. 3d at 489; *Keller v. State Farm Insurance Co.*, 180 Ill. App. 3d 539, 554-55, 536 N.E.2d 194 (1989); *Verbaere*, 226 Ill. App. 3d at 299. Considerable deference to the judgment and discretion of the court must be given; an increase or decrease of a fee award will be granted only if there has been a clear abuse of discretion. *Shell Oil*, 271 Ill. App. 3d at 909; *Garcia*, 265 Ill. App. 3d at 727-28; *Myrda*, 221 Ill. App. 3d at 489; *Keller*, 180 Ill. App. 3d at 554-55; *Verbaere*, 226 Ill. App. 3d at 299.

The circuit court must consider several factors when calculating reasonable attorney fees, including: the time and labor required, the novelty and difficulty of the issues, the skill required, the preclusion of other employment necessary to accept the case, the customary fee charged in the community, the amount of money involved in the case, the results obtained, and the attorney's reputation, experience, and ability. *Verbaere*, 226 Ill. App. 3d at 301; *McHugh v. Olsen*, 189 Ill. App. 3d 508, 514, 545 N.E.2d 379 (1989). The time spent on a case by an attorney is an important factor to consider. Time records, although important, are not conclusive, and the court should carefully

scrutinize them to determine whether they represent a reasonable expenditure of time in the context of the services rendered. *McHugh*, 189 Ill. App. 3d at 514.

Maryland contends that the award is excessive because the circuit court awarded fees at a rate of $150 per hour, and Maryland's attorneys, who were very experienced, charged only $94 per hour. The fact that Maryland's attorneys charged a lower rate does not make the rate awarded Mobil's attorneys unreasonably high. Courts have awarded comparable rates in other section 155 cases. See, *e.g., Verbaere*, 226 Ill. App. 3d at 302 (upholding award of fees at an hourly rate of $175). The circuit court here considered the attorney's experience and the fact that no administrative charges or costs were billed before determining that the rate requested was reasonable. It cannot be said that this finding constituted an abuse of discretion.

Maryland also disputes the number of hours billed by Mobil's attorneys, noting that its own attorneys billed fewer hours within the same time periods. Maryland does not discuss, however, the fact that it hired three separate law firms to handle the different issues in this case, one each for the Cibulskis lawsuit, the declaratory judgment action, and the attorney fee hearings. Mobil hired one firm to perform all three functions. Maryland cannot compare the time spent by Mobil's attorneys on three separate claims to services provided by one of Maryland's attorneys on one claim.

A review of the hearing, the billing statements submitted by Mobil, and Maryland's objections to fees, reveals that the circuit court thoroughly examined the record, considered all the parties' arguments, and evaluated the relevant factors before calculating the attorney fees. The court did not allow fees for repetitive legal services and reduced the requested award to eliminate billing hours it found to be excessive. Furthermore, although Maryland claims the amount requested is excessive, it offers no details regarding where or how the fees should be reduced. At no time did Maryland's attorney seek an additional evidentiary hearing, or seek to call any witnesses relative to the attorney fees. Nor did he suggest any impropriety in the procedure followed by the circuit court in assessing the attorney fee amounts. Accordingly, the court did not abuse its discretion, and the fees awarded must be upheld.

For the reasons set forth above, the decision of the circuit court must be affirmed on all issues.

Affirmed.

HOFFMAN and SOUTH, JJ., concur.