2022 IL App (1st) 201121-U

FIRST DISTRICT,
FIRST DIVISION
August 1, 2022

No. 1-20-1121

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ORLANDO VALDEZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 16 CH 016015 |
| | ) | |
| ILLINOIS CASUALTY COMPANY, | ) | Honorable |
| | ) | Anna M. Loftus, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) Plaintiff did not state a claim that the defendant insurer had a duty to settle the underlying action where he did not allege facts establishing that an excess judgment was reasonably probable. (2) Plaintiff did not allege facts establishing a conflict of interest between the insurer and its insureds. (3) Plaintiff was not entitled to damages under section 155 of the Insurance Code for insurer's allegedly "vexatious and unreasonable" actions.

¶ 2   Plaintiff Orlando Valdez was injured in an altercation at the Aquarius Club and Restaurant and brought a personal injury lawsuit against the club's owner Roman Rojas and Rojas 2459 Club, Inc. (collectively Rojas). Rojas was insured by defendant Illinois Casualty Company (ICC) with a policy limit of $1,000,000. Valdez made a settlement offer of $1,000,000

which ICC rejected. Following a jury trial, Valdez won a judgment of $2,000,000 (*Valdez v. Rojas 2459 Club, Inc., d/b/a Aquarius Club and Restaurant*, No. 13 L 8704 (Cir. Ct. Cook County, April 11, 2016)), and ICC tendered the policy limit of $1,000,000 to Valdez.

¶ 3    As part of a postjudgment settlement agreement, Rojas assigned any potential claims he had against ICC to Valdez. Valdez then brought the instant suit against ICC, alleging that ICC breached its duty of good faith and fair dealing toward its insured by not accepting a settlement offer within the policy limits despite the likelihood of an excess judgment. Valdez sought to recover the excess judgment plus costs, interest, and statutory damages for ICC's allegedly "vexatious and unreasonable" behavior. On October 7, 2020, the trial court granted ICC's section 2-615 motion to dismiss Valdez's fourth amended complaint. We affirm.

¶ 4                                      BACKGROUND

¶ 5                                  The Underlying Lawsuit

¶ 6    On September 9, 2012, at around 3 a.m., Valdez was at the Aquarius Club when an unidentified male assailant threw a beer bottle at his face. The glass from the bottle "cut [Valdez's] right eye in half" and permanently blinded him in that eye. The assailant fled the scene and was not apprehended by the club's security guards.

¶ 7    Valdez brought a personal injury lawsuit against Rojas, the unidentified assailant, unknown Aquarius Club employees and security guards, Lucio Solis, and the King and Lord Corporation.[1] In the underlying complaint, Valdez alleged that Rojas "was in charge of hiring, training and managing Aquarius Club's security." On at least one occasion prior to September 9, 2012, the assailant committed acts of violence at the club, and Rojas was aware of this fact.

---

[1] The underlying complaint alleged that Solis, as agent for King and Lord, was in the business of providing security personnel for the club, and two of King and Lord's personnel were on security detail at the club when the incident occurred.

Nevertheless, Rojas, through his agents and employees, allowed the assailant to enter the club on September 9, 2012, and served him alcoholic drinks.

¶ 8    Valdez further alleged that at around 3 a.m. on September 9, 2012, "immediately prior to" his injury, a fight broke out between two female patrons at the club, and the assailant threw a beer bottle at a waitress, striking her in the leg. Club security did not intervene or restrain the assailant, who proceeded to throw a bottle at Valdez, causing his injury. Valdez alleged that Rojas was negligent in failing to take reasonable action to protect him against the assailant's misconduct.

¶ 9    ICC undertook Rojas' defense, and the case was set for a jury trial on April 4, 2016. On March 29, 2016, Valdez sent ICC a letter stating:

> "Based on [ICC's] answers to written discovery that show primary insurance coverage policy limits of $1,000,000.00, we hereby demand settlement on behalf of Orlando Valdez in the amount of One Million Dollars.
>
> In the event that Illinois Casualty Company determines to reject this offer, please be advised that we shall seek full satisfaction of any excess judgment against defendant, Roman Rojas, and/or Illinois Casualty Company."

¶ 10    On April 5, 2016, ICC rejected Valdez's settlement demand and offered to settle for $100,000. ICC increased its offer to $200,000 "on the moment of the verdict." Valdez did not accept. On April 11, 2016, the jury returned a verdict of $2,000,000 in favor of Valdez and against Rojas, with a special finding that the unknown assailant's criminal act was reasonably foreseeable to Rojas. ICC filed a posttrial motion which it withdrew on November 3, 2016. On November 14, 2016, ICC paid Valdez the policy limit of $1,000,000 but did not tender the remainder of the judgment, costs, or interest.

¶ 11        Meanwhile, on November 8, 2016, Valdez and Rojas executed an agreement whereby Valdez agreed not to enforce the remaining judgment against Rojas in exchange for Rojas assigning to Valdez any claims that he had against ICC as a result of the judgment in the underlying suit. Valdez additionally executed a "Partial Satisfaction and Partial Release of Judgment" in which he acknowledged receiving $1,000,000 in partial satisfaction of the judgment and stated:

> "Subject to the Assignment executed by the parties *** , nothing in this document affects Orlando Valdez's right to seek full satisfaction of the amount remaining on the judgment on April 11, 2016; to wit: ONE MILLION DOLLARS and NO/CENTS ($1,000,000.00) from Illinois Casualty Company."

¶ 12                                    The Present Action

¶ 13        Valdez filed the present action against ICC on December 12, 2016. In his fourth amended complaint[2], filed on November 11, 2019, he alleged that ICC (1) breached its duty of good faith and fair dealing toward its insured by rejecting his settlement demand, (2) waived the policy limits by failing to send Rojas a reservation of rights letter after Valdez made his settlement demand, and (3) committed "vexatious and unreasonable" actions in violation of section 155 of the Insurance Code (215 ILCS 5/155 (West 2016)).

¶ 14        Valdez stated that once he made his March 26, 2016 demand to settle for the policy limit of $1,000,000, ICC had a duty to settle because of the likelihood that Rojas would be found liable for an amount exceeding the policy limit. In support, Valdez alleged that discovery in the underlying suit showed that Rojas hired, trained, and managed the club's security personnel. Additionally, Rojas knew that the assailant had previously committed acts of violence at the

---

[2] Valdez's original complaint and his first, second, and third amended complaints were dismissed without prejudice for failure to state a cause of action.

club, but through his agents and employees, he allowed the assailant into the club, served him alcohol until he was "overly intoxicated," and failed to intervene for over 40 minutes as the assailant displayed "dangerous, belligerent, aggressive, and hostile behavior." Valdez stated that he was not contributorily negligent and any potential contributory negligence of third parties would not decrease Rojas' chances of being found liable.

¶ 15    Valdez alleged there was a reasonable probability of an excess judgment because of his "loss of normal life experienced, pain and suffering experienced, and the permanent disfigurement experienced." He incurred medical expenses of $43,292 from Stroger Hospital, $2500 from Scott Ocularists, $2880 from St. Mary & Elizabeth Medical Center, and $1076 from Superior Air Ground Ambulance, but he did not seek compensation for these expenses because he considered them "of minimal consequence" compared to his other damages. Valdez asserted that, under these facts, ICC "maliciously and purposely breached its duties of Good Faith and Fair Dealing" toward its insured by rejecting his settlement demand.

¶ 16    Valdez also claimed that his settlement demand created a conflict of interest between ICC and Rojas "because ICC has an incentive to take a chance on a low verdict while [Rojas'] interest is for the policy to be tendered and protect its own assets." ICC did not send Rojas a reservation of rights letter advising him of the likelihood of an excess judgment and of his right to seek independent counsel. Valdez claimed that by failing to do so, ICC "waived any defense concerning its scope of coverage owed to its insured(s)" and Valdez was entitled to the excess $1,000,000 judgment, interest, and costs.

¶ 17    Additionally, Valdez sought costs and statutory damages of $60,000 under section 155 of the Insurance Code, which provides:

"In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed *** $60,000." 215 ILCS 5/155(1) (West 2016).

¶ 18    Valdez alleged that ICC acted vexatiously and unreasonably in several ways: It did not accept Valdez's settlement demand and did not provide Rojas a reservation of rights letter. It withdrew its posttrial motion without Rojas' consent despite being aware the excess judgment placed Rojas at financial risk. It waited until seven months after the judgment to pay Valdez the policy limit of $1,000,000 and did not tender statutory interest and costs. Lastly, in 2019, after the litigation had been ongoing for three years, ICC offered to pay Valdez statutory interest but did not offer to pay his costs and provided no "justifiable explanation" for failing to pay his costs in 2016.

¶ 19    On January 21, 2020, ICC moved to dismiss Valdez's fourth amended complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)). The trial court dismissed Valdez's complaint with prejudice on October 6, 2020, finding he did not allege facts establishing a reasonable probability that Rojas would be found liable or that the judgment would exceed the policy limits. He also did not allege facts indicating that ICC acted in bad faith during settlement negotiations:

"ICC *** responded to a demand with an offer and then noted it would increase the offer to four times the specials, establishing that it was willing to engage in meaningful and

good-faith settlement negotiations. There's no factual allegations to explain why these offers were a misevaluation of plaintiff's claim."

The trial court also found that Valdez failed to allege a conflict of interest between ICC and its insured: "Merely having settlement negotiations and having the insurer not meet the demand is not sufficient to establish a conflict of interest." Finally, Valdez's release unambiguously released his rights to any amount over $1,000,000, including interest and costs.

¶ 20                                    ANALYSIS

¶ 21        A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint, taking as true all well-pleaded facts and any reasonable inferences that arise from them. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. "The essential question is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Id.* We review an order granting a section 2-615 motion *de novo*. *Id.*

¶ 22                                    Duty to Settle

¶ 23        Valdez argues the trial court erred in finding he did not allege sufficient facts to establish that ICC had a duty to settle the underlying action.

¶ 24        Illinois courts have recognized that insurers have a duty to act in good faith in responding to settlement offers. *Chandler v. American Fire & Casualty Co.*, 377 Ill. App. 3d 253, 256 (2007). Our supreme court has explained:

>        "In the typical 'duty to settle' case, the third party has sued the policyholder for an amount in excess of the policy limits but has offered to settle the claim against the policyholder for an amount equal to or less than those policy limits.

In this circumstance, the insurer may have an incentive to decline the settlement offer and proceed to trial. The insurer may believe that it can win a verdict in its favor. In contrast, the policyholder may prefer to settle within the policy limits and avoid the risk of trial. The insurer may ignore the policyholder's interest and decline to settle." *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 524-25 (1996); see also *Haddick ex rel. Griffith v. Valor Insurance*, 198 Ill. 2d 409, 415 (2001).

¶ 25       To state a cause of action for failure to settle, plaintiff must allege that (1) a third party demanded settlement within the policy limits, (2) there was a "reasonable probability" of a finding of liability against the policyholder, and (3) there was a "reasonable probability" of recovery in excess of the policy limits. *Powell v. American Service Insurance Co.*, 2014 IL App (1st) 123643, ¶ 18 (citing *Haddick*, 198 Ill. 2d at 417). An insurer that fails to settle in such circumstances is liable for the full amount of a judgment against the policyholder, regardless of the policy limits. *Cramer*, 174 Ill. 2d at 525.

¶ 26       Valdez alleged sufficient facts to show a reasonable probability that Rojas would be found liable in the underlying suit. A business invitor owes a duty of care to business invitees to protect them against "the unreasonable risk of physical harm" (*Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 440 (2006)), including harm caused by reasonably foreseeable criminal acts of third parties. *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141, 147 (2000) (where angry, intoxicated patrons ejected from club were pounding on the doors and yelling at the bouncers, "it was reasonably foreseeable that a patron would be attacked upon exiting the club and, therefore, it was incumbent on the club to guard against such an occurrence"). Valdez alleged that (1) the assailant had a prior history of violent acts at the club; (2) Rojas was aware of his history when allowing him into the club and serving him alcohol; (3) the assailant became intoxicated and

"exhibit[ed] dangerous, belligerent, aggressive and hostile behavior" for "over 40 minutes"; and (4) although Valdez and other patrons brought his behavior to the attention of the club's security personnel, they took no action. Although the underlying complaint named Lucio Solis and the King and Lord Corporation as co-defendants, discovery in the underlying suit showed that Rojas hired, trained, and managed the club's security personnel.

¶ 27    Taking these allegations as true and viewing them in the light most favorable to Valdez (*Cochran*, 2017 IL 121200, ¶ 11), it was "more likely than not" that a jury would find the assailant's criminal attack was reasonably foreseeable and Rojas was liable for failing to take reasonable action to prevent it. See *Powell*, 2014 IL App (1st) 123643, ¶ 36 (at the pleading stage, plaintiff must allege facts "which show that liability is at least more likely than not, but not necessarily a certainty").

¶ 28    However, Valdez did not sufficiently allege a reasonable probability of an excess judgment. Bare conclusions of law or conclusory factual allegations unsupported by specific facts are insufficient to withstand a section 2-615 motion to dismiss. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 35. Valdez alleged no facts that would make an excess judgment probable aside from his subjective characterization of his injury as "grievous" and his unsupported, conclusory assertions that his "loss of normal life," "pain and suffering," and "permanent disfigurement" were likely to result in a judgment over $1,000,000.

¶ 29    *Haddick*, 198 Ill. 2d at 417-18, and *Powell*, 2014 IL App (1st) 123643, are illustrative by contrast. In *Haddick*, plaintiff brought a wrongful death suit against the driver at fault in a fatal car accident. Plaintiff informed the insurer that the decedent's medical bills were over $80,000 and demanded settlement for the policy limit of $20,000. *Id.* at 411-12. Under these facts, the insurer was aware that an excess judgment was reasonably probable. *Id.* at 417-18. Similarly, in

*Powell*, 2014 IL App (1st) 123643, plaintiff made a demand for the policy limit of $20,000. Since the insurer knew that plaintiff had a worker's compensation lien for $74,000 and had incurred $23,000 in medical expenses, it was aware an excess judgment was reasonably probable. *Id.* ¶¶ 30-32. By contrast, in *Founders Insurance Co. v. Shaikh*, 405 Ill. App. 3d 367, 373 (2010), we held an insurer had no duty to settle where plaintiff's "medical and wage claims were only about half the policy limits and he opened settlement negotiations with a demand for the policy limits, not more."

¶ 30        Here, Valdez alleged that he incurred less than $50,000 in medical expenses, and ICC made settlement offers of $100,000 and $200,000. As the trial court aptly stated, "There's no factual allegations to explain why these offers were a misevaluation of the plaintiff's claims."

¶ 31        Additionally, Valdez did not allege facts that would show ICC rejected his settlement demand in bad faith. "Bad faith" consists of failing to give at least equal consideration to the insured's interests in deciding whether to settle a claim. *Rogers Cartage Co. v. Travelers Indemnity Co.*, 2018 IL App (5th) 160098, ¶ 89. Relevant factors include "(1) potential for an adverse verdict, (2) potential for damages in excess of policy limits, (3) refusal to negotiate, (4) communication with the insured, (5) adequate investigation and defense, and (6) advice of the insurance company's own adjusters and defense counsel." *Id.* Valdez alleged no facts establishing that an excess judgment was likely. He also did not allege that ICC refused to negotiate; on the contrary, after he made his settlement demand, ICC made a counteroffer to which Valdez did not respond, then indicated its willingness to double that offer. Valdez also made no allegations regarding the adequacy of ICC's investigation and defense or the advice of ICC's adjusters and counsel. Thus, the trial court properly dismissed his claim for breach of the duty of good faith and fair dealing. See *Olympia Fields Country Club v. Bankers Indemnity*

*Insurance Co.*, 325 Ill. App. 649, 673 (1945) (in the absence of "fraud, negligence, or bad faith," insurer cannot be held liable for failing to settle within the policy limits even if an excess judgment is rendered against the policyholder).

¶ 32                                   Conflict of Interest

¶ 33        Valdez next argues that his settlement demand created a conflict of interest between ICC and Rojas which required ICC to warn Rojas of the possibility of an excess verdict and provide the option of independent counsel. He claims that by failing to do so, ICC has waived any claim that it is not required to pay the excess judgment.

¶ 34        Valdez has failed to allege the existence of a conflict recognized under Illinois law. An insurer has a right to control the insured's defense unless there is an "insurmountable conflict" that "rise[s] to a level from which it appears that the insurer may not vigorously defend a claim lodged against its insured." *Illinois Municipal League Risk Management Ass'n v. Siebert*, 223 Ill. App. 3d 864, 872 (1992). For instance, an insurer must hire independent counsel for its insured if it has a duty to defend multiple insureds with adverse interests, or if proof of certain facts would shift liability from insurer to insured. *Id.* at 872-73; see also *Nandorf, Inc. v. CNA Insurance Cos.*, 134 Ill. App. 3d 134, 137 (1985) (conflict of interest existed where underlying complaint sought punitive damages for which insurer disclaimed liability, since insurer "had an interest in providing a less than vigorous defense" to allegations which would have supported imposition of punitive damages).

¶ 35        Unlike in *Siebert* and *Nandorf*, Valdez did not allege any facts that would show ICC had an incentive to provide Rojas a less-than-vigorous defense in the underlying action. He cites no law supporting his apparently novel theory that a settlement demand *ipso facto* creates a conflict of interest that entitles an insured to independent counsel.

¶ 36    In *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743 (1997), MCC unconditionally defended Mobil under a $6,000,000 policy limit. More than two years into the underlying litigation, MCC asserted the policy limit was $250,000 and advised Mobil to hire independent counsel to protect itself against an excess judgment. *Id.* at 752. We affirmed the circuit court's finding that MCC's conduct violated section 155 of the Insurance Code, finding there to be no *bona fide* dispute as to the scope of coverage. *Id.* at 752-753. We additionally found that MCC's mid-litigation change of position regarding the policy limit was not an adequate reservation of rights. *Id.* at 755. *Mobil* is not factually on point and does not stand for the proposition that an insurer has an independent "duty to warn" its insured of the possibility of an excess judgment after a settlement offer has been made.

¶ 37    In *O'Neill v. Gallant Insurance Co.*, 329 Ill. App. 3d 1166 (2002), we affirmed the trial court's finding that the defendant insurer breached its duty to settle in bad faith. The insured's liability was clear (she left her two-year-old grandson unattended in a car with the keys in the ignition and the motor running), as was the possibility of an excess verdict (the underlying plaintiff was in intensive care for a month, incurring $105,000 in medical expenses, and thereafter confined to a nursing home for life). *Id.* at 1168-69. Plaintiff's attorney offered to settle for the policy limit of $20,000; the insurer did not respond or negotiate, against the advice of its retained counsel, claims manager, and adjusters. *Id.* at 1169. As further evidence of the insurer's bad faith under the circumstances, we observed that the insurer "never bothered telling [the insured] that Mrs. O'Neill was willing to settle for her policy limits, until months after the offer expired." *Id.* at 1174. *O'Neill* does not hold that an insurer has a general duty to notify its insured of every settlement offer in the absence of a duty to settle.

¶ 38    Finally, in *R.C. Wegman Construction Co. v. Admiral Insurance Co.*, 629 F.3d 724 (7th Cir. 2011), the Seventh Circuit found that plaintiff stated a claim that the defendant insurer acted in bad faith by not notifying its insured of the possibility of an excess judgment in time for the insured to invoke its excess coverage. Based on the underlying plaintiff's "permanent physical disabilities," past and future loss of income caused by his inability to perform construction work, and "substantial medical expenses," the insurer knew that the underlying lawsuit presented a "realistic possibility" of an excess judgment. *Id.* at 726-27. By contrast, as discussed, Valdez has not alleged facts to support a conclusion that an excess judgment was reasonably probable in the underlying suit. Thus, ICC did not have a duty to notify Rojas of the ongoing settlement negotiations with Valdez, and it did not waive the policy limits by failing to issue a reservation of rights.

¶ 39                                        Section 155 Claim

¶ 40    Finally, Valdez contends that the trial court erred in dismissing his claim for damages under section 155 of the Insurance Code (215 ILCS 5/155(1) (West 2016)). Section 155 allows a policyholder to recover attorney fees, costs, and statutory damages from an insurer whose conduct with respect to a claim is "vexatious or unreasonable." *Rogers Cartage Co.*, 2018 IL App (5th) 160098, ¶ 94. "The purpose of section 155 is to provide a remedy to insureds who encounter unnecessary difficulties resulting from an insurance company's vexatious and unreasonable refusal to honor its contract with the insured." *Id.*

¶ 41    Valdez argues that ICC acted vexatiously and unreasonably in several ways: (1) it did not accept his settlement demand; (2) it did not provide Rojas a reservation of rights letter; (3) it withdrew its posttrial motion without Rojas' consent; and (4) although ICC tendered the policy limit of $1,000,000, it did not tender postjudgment interest and costs.

¶ 42      Valdez has not alleged facts establishing that ICC had a duty to accept his settlement demand or provide Rojas a reservation of rights letter. Thus, ICC's conduct in this regard was not vexatious or unreasonable. Valdez alleged that ICC filed a posttrial motion which it withdrew on November 3, 2016, but he failed to allege any facts regarding the substance of the motion, its merits, or the circumstances of its withdrawal. He made only a brief conclusory assertion that by withdrawing the motion without obtaining Rojas' consent, ICC breached its "duty to settle and protect the interests of [its] insureds." In the absence of specific factual allegations supporting his claim, dismissal was proper. See *Coghlan*, 2013 IL App (1st) 120891, ¶ 35.

¶ 43      Finally, Valdez argues that ICC's "obdurate and inexplicable" failure to tender interest and costs in the underlying action entitles him to damages under section 155. Under section 2-1303 of the Code of Civil Procedure, a judgment creditor is entitled to interest on unpaid judgments. 735 ILCS 5/2-1303 (West 2014); see *Niemeyer v. Wendy's Int'l, Inc.*, 336 Ill. App. 3d 112, 115 (2002) (section 2-1303 interest is "mandatory, positive and self-executing" (internal quotation marks omitted)). However, Valdez released his claim to interest and costs. A release is a contract and thus its interpretation is governed by general contract law. *Shultz v. Delta-Rail Corp.*, 156 Ill. App. 3d 1, 10 (1987). "[A]n unambiguous contract is enforced as it is written." *McHenry Savings Bank v. Autoworks of Wauconda, Inc.*, 399 Ill. App. 3d 104, 111 (2010).

¶ 44      The release states:

> "Orlando Valdez, the JUDGMENT CREDITOR, having received partial satisfaction and payment in the amount of ONE MILLION DOLLARS and NO/100 CENTS ($1,000,000.00) on the judgment in the amount of TWO MILLION DOLLARS and NO/100 CENTS ($2,000,000.00) *** hereby partially releases and hereby

acknowledges partial satisfaction on the aforesaid judgment. *** [N]othing in this document affects Orlando Valdez's right to seek *full satisfaction of the amount remaining on the judgment on April 11, 2016; to wit: ONE MILLION DOLLARS and NO/CENTS ($1,000,000.00)* from Illinois Casualty Company." (Emphasis added.)

¶ 45    By this language, Valdez released all claims against ICC except the unpaid $1,000,000 as "full satisfaction of the amount remaining on the judgment." The trial court correctly found that Valdez may not seek to additionally recover interest, costs, and statutory damages under section 155. Although Valdez argues that "judgments contain interest and costs as a Matter of Law," he could and did waive any such recovery. Accordingly, the trial court did not err in dismissing his claim for damages under section 155.

¶ 46                                  CONCLUSION

¶ 47    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 48    Affirmed.